### ASHLAND WATERWORKS CO. v. CITY OF ASHLAND et al.

(District Court, E. D. Kentucky. February 21, 1916.)

1. CONSTITUTIONAL LAW ⬤➾121—IMPAIRING OBLIGATION OF CONTRACTS.

   In 1890 a city in Kentucky granted to defendant's predecessors the right to operate a waterworks plant by an ordinance which provided that after ten years and at the expiration of each period of one year thereafter the city should have the privilege to purchase the plant at a price to be fixed by appraisers. Thereafter Const. Ky. § 157, was adopted. It provides that no city shall be permitted to become indebted in any manner to an amount exceeding in any year the income provided for that year without the assent of two-thirds of the voters at an election to be held for that purpose. The city thereafter elected to purchase the waterworks plant, but the indebtedness which would thereby be incurred would exceed the current income and revenue. *Held*, that the constitutional provision did not impair the obligation of the contract between the city and defendant's predecessors, in violation of the federal Constitution, since the contract imposed on the city no obligation to defendant and its predecessors to exercise the option or privilege of purchase thereby conferred, and the Constitution in no way affected the obligation resting on the city of permitting defendant and its predecessors to exercise the rights granted, and hence such option to purchase could only be exercised in accordance with such section.

   [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 285, 304–311, 342–348; Dec. Dig. ⬤➾121.]

2. CONSTITUTIONAL LAW ⬤➾127—IMPAIRING OBLIGATION OF CONTRACTS.

   The conferring of power on a city to purchase a waterworks plant was not a contract between the state and city that such power should continue

---

to exist, and the state could burden it, or take it away entirely, as it saw fit.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 325–341; Dec. Dig. ☜127.]

**3.** CONSTITUTIONAL LAW ☜42—IMPAIRING OBLIGATION OF CONTRACTS.

Even if there was a contract between the state and a city, under which the city had power to purchase a waterworks plant, the proprietor of such plant could not complain that a constitutional provision subsequently adopted, imposing conditions on the exercise of such power impaired the state's obligation thereunder to the city.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 39, 40; Dec. Dig. ☜42.]

**4.** MUNICIPAL CORPORATIONS ☜867—INDEBTEDNESS—SUBMITTING QUESTION TO POPULAR VOTE.

A favorable vote by the voters of a city on the question of incurring an indebtedness in a sum not exceeding $175,000 for the purpose of purchasing and acquiring the rights, property, and franchise of a waterworks system did not authorize the city to incur an indebtedness of over $276,000 for such purpose.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1841; Dec. Dig. ☜867.]

**5.** MUNICIPAL CORPORATIONS ☜1034—SUITS—PLEADING.

Where a city's power to exercise an option for the purchase of a waterworks system was subject to Const. Ky. § 157, prohibiting the incurring of any indebtedness in excess of the current revenues without the assent of two-thirds of the voters voting at an election held for that purpose, a party suing the city for specific performance of its contract to purchase the system was bound to allege the facts showing that the city had a right to incur the indebtedness which the performance of such contract would create.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2203–2205; Dec. Dig. ☜1034.]

In Equity. Suit by the Ashland Waterworks Company against the City of Ashland and others. On motion to strike. Bill dismissed.

George B. Martin, of Catlettsburg, Ky., and Holt, Duncan & Holt, of Huntington, W. Va., for complainant.

Proctor K. Malin, Simeon S. Willis, and John T. Diederich, all of Ashland, Ky., for defendants.

COCHRAN, District Judge. This cause is before me on plaintiff's motion to strike from the defendants' answer and counterclaim. That pleading consists of six paragraphs. The motion is to strike all of the paragraphs except the fourth and a certain portion of that paragraph.

I begin with the motion as to the fifth paragraph. This is a suit to enforce specific performance of a contract of purchase of the plaintiff's waterworks in the city of Ashland and vicinity against the defendant city. By an ordinance of July 10, 1890, the defendant city granted to Gardner & McGlasson, their successors and assigns, the right to construct and operate a waterworks plant therein for the term of 20 years from the date of its completion. By section 13 thereof it was provided that at the expiration of 10 years after the completion thereof, and at the expiration of each succeeding period of one year

thereafter, the city should have the privilege to purchase the plant, provided it gave notice of its intention to do so at least 6 months before the expiration of such period of years, at a price to be determined by three appraisers, one appointed by the grantees or their assigns, one by the city, and the third chosen by these two appointees, or, if they could not agree, by the Circuit Judge of some adjoining circuit. It was further provided therein that, in case the city should fail or decline to exercise its option to purchase, the rights and privileges granted should be extended for a further period of 20 years. This ordinance was accepted by the grantees and the plant completed on or about February 1, 1891. The rights under the grant according to the allegations of the bill passed by transfer in 1895 to the Boston Safety Deposit & Trust Company, in 1899 to the Ashland Water Company, and on or about January 1, 1901, to the plaintiff. By an ordinance of date October 4, 1900, the defendant city consented that the Ashland Water Company, the then owner of the plant, might change its method of supplying water to the city and otherwise improve its plant, and it was therein also provided that there was reserved to the city the right and privilege of purchasing the plant as improved, to be exercised at the expiration of 10 years after the ordinance should go into effect, or of every year thereafter during the term of the contract with the city, or of the contract, the price to be fixed by appraisement as provided in section 13 of the ordinance of July 10, 1890.

By an ordinance of date July 3, 1911, the city elected and agreed to purchase the plant, and appointed John W. Hill as one of the appraisers. The plaintiff thereupon appointed Benzette Williams as one, and these two chose A. W. McCallum as the third. An appraisement was made by Williams and McCallum February 14, 1912, by which the price was fixed at $276,829, and the city was to pay 6 per cent. interest thereon from July 3, 1911, and receive the earnings from that date. April 1st the plaintiff notified the city of its readiness to transfer its plant to the city upon payment of the price called for in the appraisement, which by the original ordinance the city had 60 days to pay. The city failing and refusing to make payment, this suit has been brought to enforce specific performance of the contract of purchase thus entered into, and to compel payment of the purchase price so fixed.

[1] The defense set up in the fifth paragraph of the answer and counterclaim is want of power in the defendant city to make and perform the contract of purchase. This want of power arises, as defendant claims, out of sections 157 and 158 of the Kentucky Constitution and a certain provision in the city's charter approved March 26, 1878. No notice will be taken of this provision. By section 157 it is provided that no city shall be authorized or permitted to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose, and an indebtedness contracted in violation of the section shall be void. By section 158 it is provided that cities of the class to which defendant city belongs shall not be authorized to incur in-

debtedness to an amount, including existing indebtedness, in the aggregate exceeding 5 per cent. on the value of the taxable property therein, to be estimated by the assessment next before the last assessment previous to the incurring of the indebtedness, except when the same had been authorized under laws in force prior to, or, when necessary for the completion of and payment for a public improvement undertaken, and not completed and paid for, at the time of, the adoption of the Constitution, which was the 28th day of September, 1891.

By the facts alleged in the fifth paragraph of the answer and counterclaim the purchase price for the plant fixed by the appraisers, to wit, $276,829, and the then existing indebtedness of the city exceeded the amount of indebtedness allowed by section 158 by over $175,000. Hence it prohibited the making and performance of the contract of purchase, if it was effective as to it, unless it came within the exception of the section that an indebtedness in excess of the maximum percentage might be incurred when it had been authorized under laws in force prior to the adoption of the Constitution. I am not prepared to say that it did not come within the exception. Hence I pass this section by and come to section 157.

This section contains no exceptions whatever. It positively prohibits a city from incurring an indebtedness in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year without the assent of two-thirds of the voters. By the facts alleged in the paragraph under consideration the purchase price fixed by the appraisers largely exceeded the income and revenue for the year to which the contract of purchase was assignable. So to this extent, at least, the defendant city was without power to make and perform that contract, if section 157 is effective as to it. But plaintiff claims that this section of the Kentucky Constitution is not effective as to this contract of purchase, because to give it such effect would be in violation of the provision of the federal Constitution by which each of the states is prohibited from passing a law impairing the obligation of contracts. It makes this out in this way: The ordinance of July 10, 1980, enacted before the adoption of the present Constitution, was a contract between the defendant city and its predecessor. Thereby the city had the privilege and option of purchasing its plant at the time and in the way hereinbefore set forth. In the exercise of this privilege and option it was free and unhampered. It could do as it chose. If section 157 of the Kentucky Constitution applies to the contract, it can exercise it only in accordance with its provisions, and thereby the obligation of the city's contract with it is impaired. It contends that this could be done no more than the power could be taken away from the city to exercise the option and privilege at all.

It must be conceded that the power to add conditions under which the option and privilege might be exercised and the power to take it away entirely stand on the same footing. But can it be said that thereby the obligation of the contract between plaintiff's predecessor and the city is impaired, within the meaning of the federal Constitution? It is to be borne in mind that the provision thereof is, not that

no term in a contract shall be changed or removed by the action of the state, but that no state shall impair the obligation of contracts. The matter which it protects is the obligation contained in a contract. Now, giving section 157 of the Kentucky Constitution the effect claimed for it by defendants does not affect any obligation in the contract in question. Thereby the city was under an obligation to permit Gardner and McGlasson, their successors and assigns, to exercise the rights thereby granted and to pay the rentals thereby provided for. This obligation is to no extent affected in giving section 157 the effect claimed for it. All that it affects is the option and privilege of purchase thereby conferred on the city. It annexes a condition to the exercise of that option and privilege which did not theretofore exist. The city was under no obligation to the grantee, its successors or assigns, to exercise this option or privilege. It was with the city alone whether it would exercise it.

The plaintiff cites and relies on the following authorities in support of its position, to wit: Slade v. Lexington, 141 Ky. 214, 132 S. W. 404, 32 L. R. A. (N. S.) 201; Denver v. New York Trust Co., 187 Fed. 890, 110 C. C. A. 24; Sala v. New Orleans, Fed. Cas. No. 12,246. In the Lexington Case the contract involved was that between the city and the Lexington Hydraulic & Manufacturing Company, by which the latter was to install a water plant adjacent to the city and to furnish wholesome water for domestic and public purposes for a term of 25 years. It was entered into in 1883; i. e., before the adoption of the present Constitution of Kentucky. It contained a provision giving the city the right or option to buy the plant after a certain period for a price to be fixed by three commissioners. It also provided as follows, to wit:

"At the expiration of 25 years from the date of completion and testing of said waterworks, if the city of Lexington does not or has not purchased said waterworks upon above terms, it shall renew the contract with said company for 25 years longer upon terms as mutually agreed on at that time."

The plant was installed in 1885. The 25-year term expired in 1910. The option of purchase had not been exercised, and there was no intention whatever to exercise it. Instead, the city and the company entered into a contract of renewal for an additional period of 25 years upon terms mutually agreed upon, as it had been provided in the original contract it should do. This contract of renewal came within the prohibition of section 157, if it applied thereto. It was held that it did not so apply, because, if it did, it would impair the city's obligation to renew the contract contained in the original contract, and the federal Constitution prohibited such an impairment. The whole contest in that case was around the question whether the city was under an obligation to renew. It was contended on behalf of the taxpayers, who brought the suit to enjoin the performance of the contract, that there was no enforceable contract on the part of the city, and hence it was under no obligation so to do, because the contract was to renew "upon terms as mutually agreed on at that time"—i. e., when the renewal contract was entered into. It was held that, notwithstanding this clause, there was an enforceable contract on the part of the city

to renew, and hence it was under an obligation so to do. This being so, that obligation was protected by the federal Constitution. It is thus seen that the question which we have here was not there involved. Had the city exercised its option to purchase, and the purchase price had been fixed as provided for in the contract, then the case would have presented the question which we have here. But this the city had not done.

In the New Orleans Case the Legislature of Louisiana in 1833 passed an act (Laws 1833, p. 151) incorporating the Commercial Bank of New Orleans. It thereby empowered the bank to construct and operate a waterworks plant to supply water to the city of New Orleans, and provided that at any time after the expiration of 35 years the city might purchase the plant at a price to be fixed by arbitrators and pay the price in its bonds. Pursuant to this act the plant was constructed and put in operation. In 1852 the Legislature of Louisiana passed an act (Laws 1852, No. 71) prohibiting the city from issuing any bonds or incurring any debt, unless same should be authorized by the vote of a majority of the qualified voters of the city, and providing further that no ordinance creating a debt or loan, should be valid unless it provided for full payment of such debt or loan, principal and interest. In 1868, after the expiration of the 35-year period, the city elected to purchase the waterworks, the price was fixed as provided for, and bonds were issued in payment of the purchase price. But there was no submission of the matter to the qualified electors of the city, and the ordinance or resolution under which the purchase was made and bonds issued did not provide for the payment of the bonds, as required by the act of 1852. Thereafter certain of the bondholders, conceiving that the bonds were invalid, because not issued in accordance with the provisions of the act of 1852, brought suit against the city to rescind the contract of purchase and get back the plant. The city defended, and it was held that the act of 1852 had no application, because for it to have application would be in violation of the provision of the federal Constitution prohibiting a state from impairing the obligation of contracts. But the basis of the decision was that the act of 1833 incorporating the bank was a contract between the state and the bank. Thereby the state had contracted with the bank that the city might have the power of purchasing the plant at the expiration of the 35-year period, and hence it was under an obligation to continue to permit the city to exercise such power, and any legislation taking away this power or burdening its exercise was prohibited by the federal Constitution. Judge Woods said:

"It seems to me that the power of the city to issue bonds in payment of the purchase money of the waterworks was clearly given by the charter of the Commercial Bank. It is just as clear that the power of the city to buy the waterworks and to issue its bonds therefor was a provision of the charter of the bank, beneficial to the bank, and that it formed a part of the contract of the state with the bank, expressed in the charter of the bank. The state could not take away from the city the power of purchasing the waterworks without interfering with the charter of the bank in a material particular. It seems to me clear that after the 35 years from the passage of the charter have expired, and the city has, through its proper officers, elected to purchase the waterworks, an act * * * forbidding the issue of the bonds,

or imposing onerous conditions upon their issue, not in force at the date of the charter of the bank, would be a direct and palpable invasion of the chartered privileges of the bank."

And again he said:

"If, therefore, the acts of 1852, 1853, and 1855 were intended to impose conditions upon the issue of waterworks bonds not contained in the charter of the bank, they impaired the obligation of the contract between the state and the bank contained in the charter, and were therefore to that extent unconstitutional and ineffectual."

[2, 3] Here, however, there was no contract between the state and plaintiff's predecessor that the city might exercise an option of purchase, the obligation of which would be impaired by section 157, if it be held to apply here. Nor was there any contract between the state and the city that it might exercise such an option. The most that can be said is that the state had empowered the city to purchase. The conferring of such power, however, is not a contract between the state and the city that it shall continue to exist, and hence the state can burden it, or take it away entirely, as it sees fit. And even if there were any such contract between the state and the city, the plaintiff cannot complain of any violation of the obligation arising therefrom to the city. It can complain only of the violation of an obligation to it.

This leaves us the Denver Case. The city of Denver had power to grant a franchise for the use of its streets by a water company for 20 years only, and it had no power to grant an exclusive franchise at all. April 10, 1890, it granted to the Denver Union Water Company a 20-year franchise under which it constructed a plant to supply the city with water. In section 11 of the grant an option of purchase by the city at the expiration of the franchise was provided for, and in section 12 an option of renewal at a reduced hydrant rental for another 20 years. The city had power to purchase, and to bind itself by the grant to do so at the end of the 20 years. It had power to renew the franchise for 20 years at the end of the first 20 years, but it had not the power to bind itself to renew at the beginning thereof. Immediately upon the expiration of the franchise on April 10, 1910, by an amendment to the city's charter, it was prohibited from either purchasing the plant or renewing the lease, except as therein provided, and it was empowered to construct a plant of its own. Thereupon certain of the bondholders of the water company brought suit to enjoin the city from acting under the amendment, to which it made the water company a defendant. The plaintiffs claimed that the city had elected to purchase under its option. The water company by cross-bill claimed that it had elected to renew. The United States Circuit Court of Appeals for the Eighth Circuit held that it had done neither. It held, however, that by the grant the city contracted to purchase the plant at the end of the 20 years if it did not then renew it, that the amendment impaired the obligation of this contract, and that therefore the plaintiffs were entitled to the relief which they sought.

There is nothing in this decision to support plaintiff's contention here. The defendant city never bound itself to purchase prior to the enactment of the ordinance of July 3, 1911, by which it undertook

to exercise its option to purchase. Before then it merely had an option to purchase. It was under no obligation to do so. Hence there was no obligation for section 157 to impair. A consideration of these three decisions relied on by plaintiff in support of its contention results, therefore, in the conclusion that they do not do so.

The defendants cite two decisions as being against plaintiff's contention, to wit: Knoxville Water Co. v. City of Knoxville, 200 U. S. 22, 26 Sup. Ct. 224, 50 L. Ed. 353; City of Denver v. New York Trust Company, 229 U. S. 123, 33 Sup. Ct. 657, 57 L. Ed. 1101. That in the last case was a decision by the Supreme Court on writ of certiorari from the decision of the Eighth Circuit Court of Appeals, in the last of the three cases relied on by the plaintiff, whereby it reversed the judgment of the lower court. These two decisions should be considered, so as to bring out their bearing, if any, upon the question in hand.

In the Knoxville Case the city of Knoxville in 1882 granted to the Knoxville Water Company an exclusive franchise as against any other person or corporation. The grant contained a provision to the effect that after the expiration of 15 years, and every year thereafter, the city might have the right to purchase the plant. In 1903, before the expiration of the franchise, the city was empowered by the Legislature to construct and operate a plant of its own, and it was proceeding to carry out this legislation, when the water company sought to enjoin it from further so proceeding, because the legislation was an impairment of the obligation of its grant of an exclusive franchise. It was held that it was not. The ground of the decision was that the construction and operation of a plant by the city itself was not a violation of the agreement that it would not grant a franchise to another person or corporation.

In the Denver Case the Supreme Court reversed the decision of the lower court, on the ground that there was no contract on the part of the city in the grant of 1890 to purchase the plant at the end of 20 years, if it did not then renew the franchise, as that court had held. It held that the city was under no obligation to purchase the plant or to renew the franchise, and hence it had the right to proceed under the amendment.

It is thus seen that neither of these two cases involved the question we have here. And yet it cannot be said that they do not have an indirect bearing. The legislation complained of in each case, empowering the city to construct and operate a plant of its own, made it so that if the city wanted to have such a plant it was not shut up to exercising its option of purchase as it was before its enactment. By reason thereof it was so placed that it need not exercise the option, but might construct a plant of its own; and, in the Denver Case, the right to exercise the option was burdened as provided in the amendment. Had the city exercised its option contrary to the amendment, then the case would have presented the exact question which we have here.

[4] I am therefore constrained to hold that the exercise of the option to purchase, as given to the defendant by the ordinance of July,

10, 1890, was burdened by section 157 of Kentucky Constitution. It could not be exercised otherwise than in accordance with its terms. It appears, however, from the allegation of the fifth paragraph of defendant's answer, that the matter of exercising the option of purchase was submitted to the voters of the city at an election held in 1911, and that more than two-thirds of those voting approved its exercise. The allegation thereof in regard thereto is:

"That an election was held in said city in the year 1911 to take the sense of the voters of said city upon the question as to whether or not said city should incur an indebtedness in a sum not exceeding $175,000 for the purpose of purchasing and acquiring the rights, property, and franchise of the complainant herein, and at said election more than two-thirds of the voters thereof voted in favor of said proposition."

According to this, the question submitted was not the general question whether the plaintiff's plant should be purchased. Indeed, such a question could not have lawfully been submitted. If not forbidden by the Constitution itself, it was forbidden by subsection 34 of section 3490 of Kentucky Statutes, enacted to carry the section into effect as to cities of the class to which the defendant city belongs, in that it provides that the notice of election shall "specify the amount of indebtedness proposed to be incurred." The question submitted was whether the city should incur an indebtedness in a sum not exceeding $175,000 for the purpose of acquiring the rights, property, and franchise of the plaintiff. A favorable vote so to do was not a vote to incur an indebtedness of $276,829, the amount of the purchase price fixed by the appraisers, which, under the allegations of the answer, it was necessary to incur in order to make the purchase under the appraisement.

[5] It follows, therefeore, that the fifth paragraph of the answer is good, and that the motion to strike it out will have to be overruled. I think that, in view of the fact that the exercise of the option was subject to section 157 of the Constitution, it was incumbent on plaintiff, in stating its case, to have alleged facts showing that the city had the right to incur such an indebtedness. The plaintiff's motion to strike will be carried back to the bill, and it will be dismissed.

This relieves me of the necessity of considering the other questions raised by the motion to strike.