## Benjamin, et al. v. City of Mayfield, et al.

(Decided May 30, 1916.)

### Appeal from Graves Circuit Court.

1. Municipal Corporations—Purchase of Water and Light Plant— Creation of Indebtedness.—A contract executed by the City of Mayfield, before the adoption of the present constitution, obligating the city at the expiration of the contract, to purchase or re-rent a water and electric light plant erected thereunder to supply the needs of the city, created an indebtedness when the contract was executed, as contemplated in sections 157 and 158 of the State Constitution, whether the city elects to purchase or re-rent.

2. Municipal Corporations—Discharge of Indebtedness—Levy.—To discharge or refund an indebtedness created before the adoption of the present constitution, a city of the fourth class is authorized, under section 3490 of the Kentucky Statutes, to issue and sell ·its bonds in any amount not exceeding the principal of said indebtedness, without submission to the voters, and to levy each year a tax not exceeding one dollar on each $100.00 of taxable property within the city, to pay the interest thereon and provide a sinking fund to retire same, in excess of the 75 cents on the $100.00 for current expenses.

3. Municipal Corporations—Purchase of Water and Light Plant— Indebtedness.—The city being obligated by its contract to purchase or re-rent a water and light plant, the properly constituted officials of the city are vested with discretion to decide whether the city shall discharge its obligation by purchase or re-renting.

W. B. STANFIELD, J. C. SPEIGHT and JAMES BREATHITT for appellants.

ROBBINS & ROBBINS, W. J. WEBB, M. B. HOLIFIELD and R. N. STANFIELD for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

On the 30th day of July, 1891, and prior to the adoption of the present Constitution of Kentucky, the city of Mayfield, through its Board of Councilmen, adopted an ordinance which awarded to the Graves County, Water & Light Supply. Company, now the Mayfield Water & Light Company, a franchise and a contract to construct and operate a waterworks system in and for and sufficient to meet the needs of said city for a period of twenty-five years from said date, and by which said city was obligated to pay $3,840.00 a year for sixty-four hydrants, and $50.00 per annum for such additional fire hydrants as the city should thereafter rent or locate during the twenty-five years. Said franchise and contract, among many others, contains this provision, which furnishes the reason for this litigation and is section thirteen thereof:

"The said city of Mayfield, by the authority of her Council, hereby agrees and contracts with the said Graves County Water & Light Supply Company that at the expiration of this franchise, she will purchase the then waterworks and electric plant which the grantee may then have in the city of Mayfield, or re-rent of said company the fire hydrants and fountains which the city has then rented. If the said city concludes to purchase the said mentioned plants, she is to have them at an agreed price between the said company and the said city. But in the event an agreement as to price between the parties cannot be arrived at, then the matter of price is to be settled by arbitration, in which case each party shall select one arbitrator, and if these cannot settle the price, then they are to select a third arbitrator; each party may introduce evidence of value before the arbitrators. The decision of the arbitrators shall be binding on the parties."

Section 13 above quoted becomes operative on July 30, 1916, when the twenty-five years expire. On February 24, 1916, the Board of Councilmen of the City of Mayfield adopted an ordinance whereby it elected to purchase the water and light plant of the Mayfield Water & Light Company, and gave notice thereof to said company.

On the 14th day of February, 1916, said city adopted an ordinance authorizing the issual of bonds in the amount of $200,000.00, if necessary, to pay for the water and light plant, according to the terms of said contract,

when the price to be paid therefor had been determined by arbitration as therein provided.

Appellants, who are citizens and taxpayers of the city of Mayfield, brought this suit on the 24th day of February, 1916, against appellees, the city of Mayfield, Mayor, Clerk and Board of Councilmen, to enjoin them from issuing and selling said bonds upon the ground that such action would be in violation of sections 157 and 158 of the Constitution, which are as follows:

"Section 157. The tax rate of cities, towns, counties, taxing districts and other municipalities, for other than school purposes, shall not, at any time, exceed the following rates upon the value of the taxable property therein, viz.: For all towns or cities having a population of fifteen thousand or more, one dollar and fifty cents on the hundred dollars; for all towns or cities having less than fifteen thousand and not less than ten thousand, one dollar on the hundred dollars; for all towns or cities having less than ten thousand, seventy-five cents on the hundred dollars; and for counties and taxing districts, fifty cents on the hundred dollars; unless it should be necessary to enable such city, town, county, or taxing district to pay the interest on and provide a sinking fund for the extinction of indebtedness contracted before the adoption of this Constitution. No county, city, town, taxing district, or other municipality shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void. Nor shall such contract be enforceable by the person with whom made; nor shall such municipality ever be authorized to assume the same.

"Section 158. The respective cities, towns, counties, taxing districts and municipalities shall not be authorized or permitted to incur indebtedness to an amount, including existing indebtedness, in the aggregate exceeding the following named maximum percentages on the value of the taxable property therein, to be estimated by the assessment next before the last assessment previous to the incurring of the indebtedness, viz.: Cities of the first and second classes, and of the third class having a population exceeding fifteen thousand, ten per centum;

cities of the third class having a population of less than fifteen thousand, and cities and towns of the fourth class, five per centum; cities and towns of the fifth and sixth classes, three per centum, and counties, taxing districts and other municipalities, two per centum: Provided, any city, town, county, taxing district or other municipality may contract an indebtedness in excess of such limitations when the same has been authorized under laws in force prior to the adoption of this Constitution, or when necessary for the completion of and payment for a public improvement undertaken and not completed and paid for at the time of the adoption of this Constitution: And provided further, if, at the time of the adoption of this Constitution, the aggregate indebtedness, bonded or floating, of any city, town, county, taxing district or other municipality, including that which it has been or may be authorized to contract as herein provided, shall exceed the limit herein prescribed, then no such city or town shall be authorized or permitted to increase its indebtedness in an amount exceeding two per centum, and no such county, taxing district or other municipality, in an amount exceeding one per centum, in the aggregate upon the value of the taxable property therein, to be ascertained as herein provided, until the aggregate of its indebtedness shall have been reduced below the limit herein fixed, and thereafter it shall not exceed the limit, unless in case of emergency, the public health or safety should so require. Nothing herein shall prevent the issue of renewal bonds, or bonds to fund the floating indebtedness of any city, town, county, taxing district or other municipality."

An answer and reply were filed but no material fact is in issue, and from the pleadings the following facts appear:

That Mayfield is a city of the fourth class with taxable property therein amounting to $3,500,000.00; that under existing conditions the city levies and it is necessary for it to levy 75 cents on each $100.00 worth of taxable property to meet all of its necessary expenses other than amounts paid for water; that to pay the interest on the proposed $200,000.00 of bonds to purchase the waterworks plant and to create a sinking fund to mature said bonds, it will be necessary to levy an additional tax of 50 cents on each $100.00 of assessed property in said city each year, and that to re-rent the

hydrants in use and needed under present conditions will require a levy of 25 cents on each $100.00 in addition to the levy of 75 cents on each $100.00 necessary to meet current expenses.

The case having been submitted by agreement upon the pleadings and exhibits a judgment was entered dismissing the petition, from which judgment this appeal is prosecuted.

As the contract in question here was made before the adoption of the present Constitution, if it created an indebtedness against the city by section 13 quoted herein, then sections 157 and 158 of the Constitution do not apply because such an indebtedness is expressly excepted therefrom. Appellants contend, however, that said contract did not create an indebtedness within the meaning of the Constitution, and as the proposed bond issue is in excess of the 5 per cent of taxable property within said city, and the additional tax levy necessary to take care of said bond issue will be in excess of the 75 cents on the $100.00 permissible in cities of this class, that said bond issue is void because prohibited by said sections of the Constitution. It will thus be seen that the issue before us is whether or not the contract of July 30, 1891, created an indebtedness against the city, and this depends upon the meaning and effect of section 13 of said contract.

Appellants contend that this section only gives to the city an option to purchase, and numerous authorities are cited in this and other jurisdictions that hold that a contract granting an option to purchase at its termination does not create an indebtedness, but that the indebtedness is created when the option to purchase is exercised. There can be no discussion of the correctness of this proposition where the contract simply gives an option to purchase at its expiration, as is the case in all of the cases cited by appellants. These authorities, however, do not meet the proposition presented by the contract before us. In this contract the city does not have an option to purchase or not to purchase. It is bound by the contract either to purchase or re-rent, and it must do one or the other. It cannot meet its obligations under the contract except by purchasing or re-renting. Its only option is that it may do either of these two things, but whichever it accepts is an obligation existing upon it by the contract itself; so we face a proposition that is not discussed by appellants, or in any of the authorities

cited by them. The city must purchase or re-rent. If it purchases it must sell its bonds in an amount estimated by it to be $200,000.00, and if it re-rents it must continue to pay to the company to supply its present needs for water and light the sum of approximately $8,000.00 per year for whatever term it shall have to re-rent, which is not determined by the contract, but if that term should be for another twenty-five years, it will have paid at the end of that time in rentals about $200,000.00. From which it can plainly be seen that the city under its contract is now confronted with the choice of but two propositions. Under the one it is bound by its contract to pay a certain sum in cash and own its water and light plant, under the other it must pay to the company approximately the same sum during the next twenty-five years, even if there should be no increase in its demands for water and light, and at the end of that time own nothing. In either event it is under an obligation created by its contract made before the adoption of the present Constitution to pay to the water company large sums of money. The only differences to the city under its option are the terms of payment and the results thereof. The mere statement of the proposition would seem to resolve all doubt as to whether an indebtedness was created by the contract. However, this proposition is not a novel one in this State. In the case of Beard v. City of Hopkinsville, 95 Ky. 239, the city of Hopkinsville made a contract substantially like the one under consideration, but the contract in Hopkinsville was made subsequent to the adoption of the present Constitution. In that case it was contended that the obligation of the city to pay a fixed sum annually over a period of years did not create an indebtedness for the sum of all payments within the meaning of the Constitution, although the aggregate of the several payments exceeded the constitutional limit of indebtedness, because each payment to be paid out of the annual levy was within the constitutional limit. This court in that case held that by a contract to pay water rents throughout a period of years the city, at the time the contract was made, did "incur an indebtedness" for the entire amount in the sense these terms are used in the Constitution, in which opinion the following is quoted from the City of Springfield v. Edwards, 84 Ill. 626, wherein a constitutional provision similar to ours was under discussion:

"If a contract or undertaking contemplates, in any contingency, a liability to pay when the contingency occurs, the liability is absolute—the debt exists—and it differs from a present unqualified promise to pay only in the manner by which the indebtedness was incurred. And since the purpose of the debt is expressly excluded from consideration, it can make no difference whether the debt be for necessary current expenses or for something else."

In the case of Mayfield Woolen Mills v. City of Mayfield, 111 Ky. 172, this court had under consideration the same contract that is now before us, and decided that the obligation upon the part of the city to pay the annual rents for water and light was an indebtedness within the meaning of the Constitution, and being an indebtedness created prior to the adoption of the present Constitution the levy of 25 cents on the $100.00, in excess of the 75 cents on the $100.00 fixed as the limit for taxation under the Constitution, was legal. In the course of that opinion this court said:

"It is nowhere averred that the contract with the water company for water rent had not been entered into prior to the adoption of the present Constitution though some of the averments of the amended petition seem framed with the intention of approaching such an averment, and the existence of the facts relied upon to make the tax illegal should appear clearly by the averments. Indeed, appellant's brief seems to concede the existence of this contract, and it is practically conceded by the recital in the amended petition averring the length of time it had to run when the additional contract for lights was entered into; that the contract thus existing at the date of the adoption of the Constitution was an indebtedness within the meaning of section 157 seems to be settled beyond all question by the case of Beard v. City of Hopkinsville, 95 Ky. 239."

Again in the case of Slade v. City of Lexington, 141 Ky. 214, the precise question now under consideration was before this court in a contract made before the adoption of the present Constitution. The city of Lexington had obligated itself at the expiration of its contract either to buy the waterworks plant or renew the rental contract. At the expiration of the contract in 1910 the city of Lexington elected to renew the contract of rental, and a suit was brought by a taxpayer to en-

join the execution of the renewal contract upon the ground that it was in violation of sections 157 and 164 of the Constitution, but this court held that as the obligation was created by the contract prior to the adoption of the present Constitution, the city of Lexington had the right to renew the contract with the water company without submitting the question to the legal voters.

It is therefore clear that no matter whether the city purchases the plant or renews its rental contract it is discharging an indebtedness that was created against it by the contract made before the adoption of the present Constitution. The city, therefore, has no option under this contract to avoid an indebtedness in excess of the present constitutional limitation. Either course it may pursue necessitates a levy in excess of the constitutional limit, and it is unquestionably within the discretion of the properly constituted officials of the city to decide which of the two methods shall be adopted in discharging an indebtedness thus created. To decide otherwise would impair the obligation of the contract, upon authority of a subsequently adopted State Constitution which, under the Constitution of the United States, no State has authority to do.

In subsection 26 of section 3490 of the Kentucky Statutes, it is provided:

"The board of council, aside from the indebtedness herein authorized, shall have no power to incur an indebtedness on behalf of the city which cannot be met out of the revenue of the current fiscal year; but nothing contained in this act shall be construed to prevent any city having an indebtedness contracted under laws existing at the date of the adoption of the present Constitution of Kentucky from levying and collecting such taxes for the payment of such indebtedness, and the interest thereon, as provided for in such laws, or in this act, in addition to the taxes herein authorized to be levied and collected; and in payment of the bonded and floating debt of any such city existing at the time of the passage of this act, authorized by law, the board of council may issue renewal bonds or funding bonds, bearing not exceeding six per cent per annum interest:

"Provided, That the issual of said renewal and refunding bonds shall not exceed the principal of said bonded and floating debt, and said renewal and floating bonds shall not be sold for less than par and accrued

interest. All bonds issued by any city shall be signed by the Mayor or chief executive, and countersigned by the clerk of the city, with the seal of the city affixed thereto.''

And by subsection 2 of said section 3490 it is provided that in addition to the 75 cents on the $100.00 permissible to pay indebtedness created since the adoption of the Constitution, a tax not exceeding 100 cents on $100.00 may be levied and collected for the payment of pre-existing indebtedness. These provisions apply to cities of the fourth class, to which Mayfield belongs, and it will be noticed that the two limitations are: (1) That the issual of the bonds shall not exceed the principal of the pre-existing indebtedness, and (2) that the additional tax levy for the payment of same shall not exceed 100 cents on the $100.00.

Appellants admit that the proposed bond issue is not in excess of the amount necessary to purchase the plant of the Mayfield Water & Light Company, and that a levy of much less than 100 cents on the $100.00 will pay the interest on the bonds and create a sinking fund for their retirement as due.

It, therefore, results that the proposed bond issue is not opposed by constitutional provision and is authorized by statute.