ASHLAND WATERWORKS CO. v. CITY OF ASHLAND et al.

(Circuit Court of Appeals, Sixth Circuit. May 7, 1918.)

No. 3075.

1. EQUITY ☞42(1)—JURISDICTION—WAIVER OF OBJECTION.
   Where a case is one of which either law or equity might take jurisdiction, and has been brought in equity without objection, the court is not required of its own motion to decline a hearing in equity.

2. CONSTITUTIONAL LAW ☞121(2)—OBLIGATION OF CONTRACTS—WATERWORKS CONTRACT—"CONTRACT."
   An ordinance granting a franchise to a water company for 20 years, and agreeing to pay a yearly sum for fire hydrants, and also before or at the end of the term to buy the waterworks at appraised value, or to extend the company's "rights and privileges" for 20 years, constituted a

contract, binding the city to either buy or extend, which was protected from impairment by the federal Constitution.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contract.]

3. MUNICIPAL CORPORATIONS ⚶⚶864(1)—CONTRACT—CONSTITUTIONAL LIMITATION ON INDEBTEDNESS.

Const. Ky. § 157, prohibited a city from incurring indebtedness in any year beyond the year's income unless authorized by vote, from granting any franchise except to the highest bidder, and from incurring indebtedness beyond a fixed limit "except when authorized under laws in force prior to the adoption of this Constitution." In 1890 the city by ordinance granted a franchise to a water company for 20 years, and agreed to pay a yearly sum for fire hydrants, and also before or at the end of the term to buy the waterworks at appraised value, or to extend the company's "rights and privileges" for 20 years. *Held,* that the ordinance constituted a contract binding the city to either buy or extend; that, having elected to purchase and had the property appraised, its contract to purchase was within the exception as "authorized" under prior laws, and enforceable, although it increased the indebtedness beyond the constitutional limit.

4. MUNICIPAL CORPORATIONS ⚶⚶867(2)—INDEBTEDNESS—CONSTITUTIONAL LIMITATION—SUBMISSION TO VOTE.

A constitutional provision prohibiting a city from incurring any indebtedness beyond a certain limit, unless authorized by a two-thirds vote at a special election, does not require such an election, where for any reason the proposed indebtedness is not within the prohibition.

5. PLEADING ⚶⚶247—AMENDMENT—DEPARTURE FROM ORIGINAL PLEADING.

A complainant is not estopped from adopting a different theory of his case in an amended bill to meet an authoritative decision rendered after the suit was commenced.

6. WATERS AND WATER COURSES ⚶⚶183(4)—WATER SUPPLY—CONTRACT WITH CITY—VALIDITY.

The fact that a water company, with the consent of the city granting its franchise, had extended a branch pipe line beyond the city limits, does not invalidate a contract by the city to buy the entire system.

Appeal from the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Suit in equity by the Ashland Waterworks Company against the City of Ashland and others. Decree of dismissal, and complainant appeals. Decree vacated, and cause remanded.

For opinion below, see 230 Fed. 254.

The waterworks system in Ashland (a Kentucky city of the fourth class) was installed by appellant's predecessor pursuant to the city ordinance of July 10, 1890. The presently pertinent provisions of the ordinance follow:

"Sec. 2. The rights and privileges herein granted to continue for a term of 20 years from and after the passage of this ordinance, unless sooner terminated by purchase as provided herein.

＊　　＊　　＊　　＊　　＊　　＊　　＊　　＊　　＊　　＊

"Sec. 6. The city of Ashland hereby agrees to and does rent from the said grantee or assigns for the term of 20 years, unless sooner terminated by purchase as provided herein, 90 double discharge frost proof fire hydrants, to be located in the city and set by the grantee or assigns on the aforesaid pipe system. ＊ ＊ ＊ The city at any proper season of the year may require the said grantee or assigns to make extensions of the pipe system of said works with hydrants placed thereon, ＊ ＊ ＊ but, as a condition of making such extension, the city agrees to pay rent for public fire service upon such exten-

⚶⚶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

sion at the rate of $40 per annum for each hydrant for the unexpired term of this franchise and contract.

*       *       *       *       *       *       *       *       *       *

"Sec. 8. The city of Ashland hereby * * * agrees and promises to pay an annual rental of $4,000 for the furnishing of water herein specified to all public fire hydrants located on the aforesaid original pipe system for the term of 20 years, unless sooner terminated by purchase as provided herein, which rental the city agrees to pay in quarterly installments.

*       *       *       *       *       *       *       *       *       *

"Sec. 12. In consideration of the benefits which shall be derived by the said city and its inhabitants from the construction and operation of said waterworks, and in further consideration of the water supply hereby secured for public use, and as an inducement for said grantees or assigns to enter upon the construction of said waterworks, the franchise and license hereby granted shall remain in full force and effect for a term of 20 years, and for the same consideration and as the same inducement the city of Ashland hereby rents of the said grantees or assigns for the use hereinmentioned the hydrants hereinbefore described for and during the term of 20 years from the completion of said works unless sooner terminated by purchase as provided herein.

"Sec. 13. At the expiration of 10 years after the completion of said works, and at the expiration of each succeeding period of one year thereafter, the said city shall have the right and privilege to purchase said system of waterworks, provided they notify said grantees or assigns of their intention so to do at least 6 months before the expiration of said period of years. The value of said system shall be ascertained as follows: * * * In case the city of Ashland shall fail or decline to exercise its option to purchase said works, the rights and privileges hereby granted to the said grantees or assigns shall be extended to said grantee or assigns for a further period of 20 years. The said city shall within 60 days after said board has rendered its decision, pay the amount awarded in cash, and upon such payment said grantee or assigns shall transfer to the city all their said rights and privileges and property including the said appraisement.

"Sec. 14. In the event that said grantees or assigns shall issue mortgage bonds secured by mortgage or deed of trust upon said waterworks, rentals, rights and properties, so much of the hydrant rent payable under the terms of the contract as will discharge the interest upon said bonds as shown by coupons thereon as it will mature from time to time, shall be paid from time to time by the city to the trustee or trustees of such bonds, when and as such hydrant rentals are payable by said city, and such sums shall be paid so long as interest on such bonds shall remain due and unpaid. * * *

In 1900, or a little later, the waterworks company enlarged and extended the system under an amendatory ordinance adopted October 4, 1900, which it accepted and which provided: "That there is reserved to the city of Ashland the right and privilege of purchasing the plant, property and franchise of the Ashland Water Company, * * * to be exercised at the expiration of 10 years after this ordinance shall go into effect, or at the expiration of every year thereafter during the term of the contract of said Ashland Water Company with the city of Ashland, or at the expiration of the term of said contract, the price of said plant to be fixed by appraisement, as is provided in § 13 of said ordinance of July 10, 1890."

On July 3, 1911, by ordinance duly adopted, the city elected to purchase the "plant, property and franchise" pursuant to the original and amendatory ordinances, appointed its member of the appraisement board, and gave the company notice to proceed. Pending appraisal, there was a city election at which it was decided, by a vote of 1,231 to 178, to issue not more than $175,000 of city bonds with which to make the purchase. The appraisal by the majority of the board fixed the price at $276,000, and the city then refused to go further.

In 1890 there was no limitation on the right of a city in Kentucky to contract to buy waterworks. By the Constitution of 1891, it was provided:

"Sec. 157. The tax rate of cities, towns, counties, taxing districts and other

municipalities, for other than school purposes, shall not, at any time, exceed the following rates upon the value of the taxable property therein, viz.: * * * For all towns or cities having less than ten thousand, seventy-five cents on the hundred dollars; * * * unless it should be necessary to enable such city, town, county, or taxing district to pay the interest on, and provide a sinking fund for, the extinction of indebtedness contracted before the adoption of this Constitution. No county, city, town, taxing district or other municipality shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void. Nor shall such contract be enforceable by the person with whom made; nor shall such municipality ever be authorized to assume the same.

"Sec. 158. The respective cities, towns, counties, taxing districts and municipalities shall not be authorized or permitted to incur indebtedness to an amount, including existing indebtedness, in the aggregate exceeding the following named maximum percentages on the value of the taxable property therein, to be estimated by the assessment next before the last assessment previous to the incurring of the indebtedness, viz.: * * * Cities and towns of the fourth class, five per centum: * * * Provided, any city, town, county, taxing district or other municipality may contract an indebtedness in excess of such limitations when the same has been authorized under laws in force prior to the adoption of this Constitution, or when necessary for the completion of and payment for a public improvement undertaken and not completed and paid for at the time of the adoption of this constitution. * * * Nothing herein shall prevent the issue of renewal bonds, or bonds to fund the floating indebtedness of any city, town, county, taxing district or other municipality."

The waterworks company filed this bill in equity to compel the city to pay the price awarded. The city answered by alleging certain facts said to justify its action, which facts were later denied by replication. The answer also alleged that the amount demanded was more than one year's revenue and (when added to existing debts) more than 5 per cent. of the assessed valuation, and hence insisted that the city's election to purchase, made July 3, 1911, was invalid. The company thereupon amended its bill, so as to state in full the facts from which it appeared that the purchase would be invalid if it was to be considered as made after the adoption of the constitution. The court below thought it should be so considered, and dismissed the bill without taking proofs.

Geo. B. Martin, of Catlettsburg, Ky., and Ed. C. O'Rear, of Frankfort, Ky., for appellant.

John T. Diederich, City Atty., Proctor K. Malin, and S. S. Willis, all of Ashland, Ky., for appellees.

Before KNAPPEN and DENISON, Circuit Judges, and SATER, District Judge.

DENISON, Circuit Judge (after stating the facts as above). [1] 1. The bill was said to be for specific performance. Since the main performance sought is merely the payment of money, and since this result can be accomplished by legal remedies, the jurisdiction of equity on this ground alone would not be clear. However, the record suggests matters of accounting, and perhaps of equitable cross-conditions to be prescribed, which make the case not wholly unfit for a court of equity to consider. The plaintiff has chosen, and the defendant has not objected to, this forum; and under such conditions it is not required that the court of its own motion should decline a hearing in equity.

[2, 3] 2. It is plain enough that if the city had, in 1890, assumed a contractual duty, to be performed at the end of 20 years, the Constitution of 1891 would not interfere with its execution. Section 158 does not undertake to affect debts "authorized under laws in force prior to the adoption of this Constitution"; and section 157 cannot be permitted to impair the obligation of a contract. It is equally clear that if, when the Constitution was adopted, there was nothing but an option reserved to the city, which it might or might not exercise when the specified time came, there would be no such contract as would be protected against section 157; and whether the proviso of section 158 should be construed as contemplating such an optional liability is not important in this case, because, if the liability here existing was of a merely optional character, the 1911 purchase would be absolutely prohibited by section 157, while, if the liability was of the contractual character, no construction put upon either section could defeat it. These conclusions are sufficiently developed by the Kentucky cases hereafter cited, and by the Eighth Circuit Court of Appeals and the Supreme Court in the Denver Water Co. Case, 187 Fed. 890, 110 C. C. A. 24, 229 U. S. 123, 33 Sup. Ct. 657, 57 L. Ed. 1101. We must, therefore, examine the ordinance to ascertain the true nature of the liability resting on the city in July, 1911, when it undertook to purchase.

We must think that the ordinance of 1890 did more than give the city an option to buy at the end of the stated period; it imposed an absolute duty and liability to do at that time one of two things—buy the plant or extend the franchise. The language is:

"In case the city of Ashland shall fail or decline to exercise its option to purchase said works, the rights and privileges hereby granted to the said grantees or assigns shall be extended to said grantees or assigns for a further period of 20 years."

This contemplates that the city will then be presented with the alternatives between which it must choose. One may be burdensome, one beneficial; but which character either will have cannot be foretold. The city will select the one it deems more beneficial; but select one or the other it must. There is no escape. The option to buy, considered alone, is not a contract; the option to extend is not a contract; but the two together, presented as alternatives, one of which must be accepted, make a perfected obligation. The city agrees that after 20 years it will do one of two acts as it may then prefer; this is not an option, it is a promise.

It makes no difference which branch of the alternative is first considered. The right to extend for 20 years was taken away by the Constitution of 1891 just as much as the right to buy, for section 164 forbids the granting of any franchise, except to the highest bidder. Hence we find that, if the Constitution of 1891 applies in full force to the mutual rights existing under this ordinance, it is destructive of all of them. Unless acting in a manner not contemplated by the contract, the city cannot buy, however good a bargain it may get; it cannot demand an extension of the franchise, however favorable the existing rates may be; and the company cannot get either the sale or the extension, upon the faith of having one or the other of which it invested its money and

built the plant. The right of the company to have the obligation of this contract kept unimpaired is clear. It is not necessary to go into the authorities further than to say that the facts of this case exclude it from the class in which the franchise of the Denver Company was placed by the Supreme Court (229 U. S. 136-138, 33 Sup. Ct. 657, 57 L. Ed. 1101) and put it within the class where that same franchise was thought to belong by the Circuit Court of Appeals (187 Fed. 896, 897, 110 C. C. A. 24).

We cannot see how it is material that the extension of the franchise will be automatic if the purchase is not made. It cannot make any difference in the nature of the obligation—optional or contractual—whether the selection of one alternative or the other is to be by express words or by the agreed result of conduct. If the city let the time go by for exercising its right to buy, it thereby made its election to extend, just as perfectly as if made in express words. The character of the choice is the same, whether made by words or by implication, by action or by inaction.

What we consider the precise question involved has been decided by the Kentucky Court of Appeals, and it is needless to say that, in determining whether the ordinance of a Kentucky municipality constituted a contract protected by the federal Constitution, we should differ from that court with great reluctance, even in cases where the matter was not so wholly one of construction that we would be bound to follow. In Benjamin v. Mayfield, 170 Ky. 446, 186 S. W. 169, the ordinance, granted before the Constitution of 1891, provided that at the end of the franchise period the city would re-rent the fire hydrants, at the stated price, or would buy the plant, at a price to be agreed on or be fixed by arbitration. At the end of the period and after the new Constitution, the city elected to buy the plant pursuant to its contract. In a careful opinion, the Kentucky Court of Appeals held that the contract obligation to re-rent the hydrants, though contingent, could not be impaired, and that the alternative option to buy was indissoluble from the contract to re-rent and stood upon the same basis, and hence concluded that the city's later election and promise to buy were valid. It is sought to distinguish this case from the present one because of the affirmative form in which the obligation to re-rent was put. We think there is no distinction, either in form or substance. In the present case, the ordinance, as it had developed, imposed upon the city an obligation to pay fire hydrant rentals of about $6,000 per year, and the right of the company to receive the rental was one of the most important, if not the chief, of the "rights and privileges" which the city agreed to extend for 20 years, if it did not buy. Certainly an extension of "rights and privileges" must extend the correlative duties, and the city would not have intended to deprive itself during the extended term of the right to have fire hydrant protection. It is equally sure that the city must pay for what the company must furnish. We can see no substantial difference between that form of words which says that the city shall re-rent the fire hydrants or buy the plant, and that other form of words which says that if the city does not buy the plant the hydrant rentals shall be extended.

251 F.—32

Our conclusion is also supported, if not required, by the earlier decision of the Kentucky Court of Appeals in Slade v. Lexington, 141 Ky. 214, 132 S. W. 404, 32 L. R. A. (N. S.) 201. The facts are somewhat variant, but the point of the case is that a municipal contract, not permissible under the Constitution of 1891, but contemplated by an earlier ordinance, is not reached by the constitutional prohibition. The ordinance provided that at the expiration of the franchise there should be a renewal upon terms then to be agreed upon by the company and the city. It was held that to prevent the city from entering into negotiations and agreeing upon terms of an extension, if it could do so, would be to impair the obligation of the existing contract. The ordinance thus construed in the Lexington Case certainly imposed an obligation no more perfect than was created by the Ashland ordinance; indeed, the former was contingent upon the ability of the parties to reach an agreement, while, in the latter, the liability was not contingent upon anything; there was only a privilege that the city might cast its liability in either one of two specified forms.

3. It is assumed by appellant's counsel that all 20-year periods fixed by the ordinance of 1890 began to run from the completion of the installation, which, in the last amended bill, is said to have been shortly after December 30, 1891. We have considered the case on the assumption stated. Obviously, if the 20 years had expired before July 3, 1911, so that the 20-year extension had already taken effect and so that the action of July 3 could be interpreted only as the exercise of an option given by the ordinance of 1900, a different question would be presented. We do not see that the annually recurring option during each of the second 10 years of the term (if this recurrence survived the ordinance of 1900) affects the character of the city's duty, as we have discussed it.

[4] 4. It is urged that, even if the right of the city to elect to buy is superior to the 5 per cent. limitation and the annual income limitation of the Constitution, yet that by section 157 the method of exercising the option was changed, and that the city could decide to make the purchase only by the public vote prescribed in that section rather than by the ordinary method of city action. It is said that since there was no election to buy, perfected in the only permissible method of making an election, the alternative extension of franchise took automatic effect. It is a sufficient answer to this position that, in our judgment, the two-thirds vote method of escaping section 157, prescribed by that section, was not intended to refer to cases which were not reached at all by its prohibition.

[5] 5. When the waterworks company filed its original bill, it propounded the theory that the ordinance of 1890 granted a franchise of 40 years, with the privilege of purchase at the end of 20 years. Obviously, this theory is inconsistent with the basis upon which we have thought the water company's rights depended. After the decision in the Mayfield Case, the company amended its bill and declared the theory upon which it now relies. In so doing it merely adopted the construction which the Kentucky Court of Appeals had put upon an ordinance substantially similar in this respect; and there is no element

of estoppel which can prevent it from changing its ground to conform to the law as declared by the court of last resort. As said by Justice Holmes in Northern Co. v. Grand View Co., 203 U. S. 106, 108, 27 Sup. Ct. 27, 51 L. Ed. 109, the first action of the company in this matter was "not an election, but an hypothesis."

[6] 6. Under the ordinance of 1890, the company extended a branch of its system to the village of Keys Creek, then outside the Ashland city limits, and which, though it is said now to have been included within the city, we understand remained outside on July 3, 1911. The election to buy covered the entire system, including this branch. In this fact we see no obstacle to the exercise of any otherwise perfect power to buy. It may be conceded that as an independent question the city could not buy such extraterritorial property or engage in the business of supplying water outside the limits; but this particular extension is an incident which cannot be permitted to control the whole situation. It is to be assumed that the extension was made with the approval of the city; for at least the 10 years after 1900 the city had allowed the company to understand that the election to buy covered the extension, and this branch, cut off from the stem, would be utterly worthless to the company. So far as the facts are developed, the existence of this branch and its inclusion in the purchase are not controlling.

The decree of dismissal must be vacated, and the case remanded to the District Court for further proceedings.