## Slade, et al v. City of Lexington.

(Decided December 9, 1910.)

## Appeal from Fayette Circuit Court.

1.  Corporations—Contracts—Impairment By Subsequent Legislation—Option—Amendments—Repeal of Charter.—To make the ruling that the charter of a corporation constitutes a contract between it and the State which the State cannot impair by subsequent legislation, the Legislature by the act of 1856 provided as follows:  "All charters and grants of or to corporations enacted or granted since the 4th of February, 1856, and all other statutes shall be subject to amendments or repeal, at the will of the Legislature, unless a contrary intent be therein plainly expressed, provided that whilst privileges and franchises so granted may be changed or repealed, no amendment or repeal shall impair other rights previously vested." (Ky. St. 1987.) Held, if there was a valid contract made in 1885 by which the city was bound to renew the contract if it did not exercise its option to purchase the plant, the plaintiff could not thereafter impair this contract, for by the Constitution of the United States no State may impair the obligation of a contract.

2.  Same—Impairment of Valid Contract.—The State can no more impair the obligation of a contract by subsequently adopting a new Constitution than it could by subsequent legislative action. The case therefore comes to this:  Was there a valid and enforceable contract between the city and water company, obligating the city to renew the contract for another term of 25 years when it did not exercise its option to purchase the plant?

3.  Same—Charter Requirements—Stipulations.—The water company by its charter was bound to serve the city on reasonable terms.  The council acting for the city could only demand of the water company the services contemplated in its charter on reasonable terms.  So when the parties made the stipulation that they would renew the contract for 25 years longer on terms mutually agreed on at the time, it necessarily meant that the agreement was to be made on reasonable terms.  The parties having at the end of 25 years agreed upon reasonable terms and the city being bound by its contract to renew, the property right of the water company to such renewal was not taken away or affected by the provisions of the present Constitution of the State subsequently adopted.

S. M. WILSON, HELM BRUCE and BRUCE & BULLITT for appellant.

GEO. C. WEBB, J. EMBRY ALLEN, WALLACE MUIR, ALLEN & DUNCAN, STOLL & BUSH, and HUMPHREY & HUMPHREY for appellees.

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

The city of Lexington is not on a river, and there is no natural water supply near it. With the view to supplying the city with water, the Lexington Hydraulic and Manufacturing Company was incorporated by an act of the Legislature of Kentucky, approved February 27, 1882. The scheme provided for was in substance this: The requisite quantity of land was to be bought, dams were to be built, and artificial lakes made sufficient to supply the city with water. To do all this and put in the necessary mains, involved a large outlay. To justify the investment of capital in the enterprise it was necessary that the company's rights should be fixed and certain. So among other things, the charter contained this provision:

"This act shall be and remain in force for the term of sixty years from and after its passage, but the Legislature may at any time alter, amend or repeal this act by a vote of majority of each branch thereof, but such alteration, amendment or repeal shall not be made within thirty years of the passage of this act, unless it shall be made to appear to the Legislature that there has been a violation by the company of some of the provisions of this act."

An ordinance of the city of Lexington passed in December, 1883, authorized a contract between the city and the company for a supply of water on certain terms, for twenty-five years after the completion of the plant; and it was provided that the city was to have the option of purchasing the plant at a price to be fixed by three commissioners, one to be chosen by the city, one by the company, and the third to be chosen by these two. The ordinance also contained this clause:

"At the expiration of twenty-five years from the date of completion and testing of said water works, if the city of Lexington does not, or has not, purchased said water works upon above terms, it shall renew the contract with said company for twenty-five years longer, upon terms as mutually agreed upon at that time."

The plant was completed about January 1, 1885. The term of twenty-five years mentioned in the contract ended January 1, 1910, and as the city had grown during this twenty-five years, the company's plant had been enlarged to meet the increased demands upon it, and thus a large sum of money had been spent. In the year 1909, after much conference between the city authorities

and the water company, the contract between them was renewed for twenty-five years longer upon terms agreed upon between them. A contract to this effect having been entered into between the city and the water company, J. T. Slade, and others, taxpayers of the city, brought this suit to enjoin the execution of the contract, on the ground that the city authorities were without power to make it under section 164 of the Constitution, which provides:

"No county, city, town, taxing district, or other municipality, shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years. Before granting such franchise or privilege for a term of years, such municipality shall first, after due advertisement, receive bids therefor publicly, and award the same to the highest and best bidder; but it shall have the right to reject any or all bids."

The contract in question is for a term exceeding twenty years; there was no advertisement; no bids were received for the franchise of using the streets of Lexington, the franchise was not sold to the highest bidder; there was no effort to comply with this provision of the Constitution. Section 157 of the Constitution also provides:

"No county, city, town, taxing district, or other municipality shall be authorized or permitted to become indebted in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void. Nor shall such contract be enforceable by the person with whom made; nor shall such municipality ever be authorized to assume the same."

By the contract in question the city incurred an indebtedness exceeding the income and revenue provided for the year, without the assent of two-thirds of the voters. The plaintiffs ask that the contract be adjudged void on both these grounds. The circuit court dismissed the petition and they appeal.

To meet the ruling that the charter of a corporation constitutes a contract between it and the State, which the State can not impair by subsequent legislation, the Legislature by the act of 1856, provided as follows:

"All charters and grants of or to corporations, or amendments thereof, enacted or granted since the 14th of February, 1856, and all other statutes, shall be subject to amendments or repeal, at the will of the Legislature, unless a contrary intent be therein plainly expressed; . Provided, that whilst privileges and franchises so granted may be changed or repealed, no amendment or repeal shall impair other rights previously vested." (Ky. Stat. 1987.)

It will be observed that this act did not effect charters where a contrary intent was therein plainly expressed, and so when the charter of the Lexington Water Company was granted in 1882, it was provided that the act should remain in force for the term of sixty years, and that it should not be amended within thirty years unless the company had violated the act, and then only by a majority of each branch of the Legislature, the intent being to give the company an irrepealable charter for thirty years, and a charter for thirty years thereafter which could only be amended or repealed by a majority of each branch of the Legislature. With the charter in this condition it was provided in the contract between the water company and the city, that the contract should continue for twenty-five years; that the city should have an option to purchase the plant, but that if it did not purchase the plant at the expiration of twenty-five years, it should renew the contract with the company for twenty-five years longer upon terms as mutually agreed upon at that time. If this was a valid contract between the city and the water company, the city was under obligation by the contract either to purchase the plant at the end of twenty-five years, or to renew the contract upon terms mutually agreed on. If there was a valid contract made in 1885 by which the city was bound to renew the contract, if it did not exercise its option to purchase the plant, the State of Kentucky could not thereafter impair this contract; for by the Constitution of the United States, no State may impair the obligation of a contract. The State can no more impair the obligation of a contract by subsequently adopting a new Constitution than it can by legislative action. The provisions of the Constitution above quoted, can not therefore impair the obligation of a contract made before its adoption, and were not intended to have any such effect. The case before us, therefore, comes to this: Was there a valid and enforceable contract between the city and the water

company obligating the city to renew the contract for another term of twenty-five years, when it did not exercise its option to purchase the plant?

It is insisted for the plaintiff that an agreement to renew a contract upon terms to be agreed on by the parties is a nullity, and that it is paradoxical to call such an agreement a contract. The general rule is that an agreement to make at a certain time such an agreement as the parties may then agree on is invalid but to the general rule there is a well defined exception. This was well illustrated in the case of Joy v. St. Louis, 138 U. S. 1. In that case a railroad company took a right of way under a contract which contained this stipulation as to the use of the tracks by other railroads:

"9. Said party of the second part shall permit, under such reasonable regulations and terms as may be agreed upon, other railroads to use its right of way through the park and up to the terminus of its road in the city of St. Louis, upon such terms and for such fair and equitable compensation to be paid to it therefor as may be agreed upon by such companies."

The grantee refused thereafter to agree with another road upon terms for the use of the tracks, and a suit having been brought, the matter came before Justice Brewer of the Supreme Court sitting on the circuit, it being insisted there as here that the contract was void for uncertainty. Justice Brewer held the contract valid, and referred the case to a special master to report reasonable regulations, terms and compensation. The master having filed his report, it was confirmed, and a judgment entered pursuant to it. In disposing of the case among other things, Justice Brewer said:

"Does the omission of the details destroy the power of the court, and practically nullify the force of the stipulation? Or was it the intent of the parties simply to contract for a right and leave with the court, in the absence of the agreement of parties, the full determination of all the details? I am aware of the rule that courts are not bound to relieve parties from mistakes or omissions, or to complete contracts which parties have left incomplete. But it is also true that ofttimes, at the making of a contract for a right, it may be impossible to determine details, or the changing situation of affairs may indicate that details also must be subject to modification, and, therefore, should not be definitely prescribed, and should be left to settlement by an agreement

or decree at the time the right is insisted upon. In such cases if the right is absolutely contracted for, and the details are of a nature which courts may properly fix and settle, then, I take it, the courts should not hold the contract incomplete, but determine the right and also prescribe and settle the details.'' (Cen. Trust Co. v. Wabash R. R. Co., 29 Fed. 546.)

An appeal was taken from his judgment to the Supreme court of the United States, and there the judgment was affirmed. Disposing of the objection which is made here, the Supreme Court, among other things, said:

''Paragraph 9 is imperative. It provides that the county company 'shall permit' other railroads to use its right of way. This is to be done 'under such reasonable regulations and terms as may be agreed upon ' and 'upon such terms and for such fair and equitable compensation to be paid' to the county company 'therefor as may be agreed upon by such companies.' Not only are the regulations and terms to be reasonable, but the compensation is to be fair and equitable. Although the statement is that the compensation is to be such 'as may be agreed upon by such companies,' yet the statement that it is to be 'fair and equitable' plainly brings in the element of its determination by a court of equity. If the parties agree upon it, very well; but if they do not, still the right of way is to be enjoyed upon making compensation, and the only way to ascertain what is a 'fair and equitable' compensation therefor is to determine it by a court of equity. Such is, in substance, the agreement of the parties. The provision cannot be construed as meaning that, if the parties do not agree, there is to be no compensation, and that, because there can in that event be no compensation there is to be enjoyment of the right of way. In this view it cannot be said that the court is making an agreement for the parties which they did not make themselves.'' * * *

''In the present case, it is urged that the court will be called upon to determine from time to time what are reasonable regulations to be made by the Wabash Company for the running of trains upon its tracks by the Colorado Company. But this is no more than a court of equity is called upon to do whenever it takes charge of the running of a railroad by means of a receiver. Irrespectively of this, the decree is complete in itself and disposes of the controversy; and it is not unusual for a court of equity to take supplemental proceedings to carry out its

decree and make it effective under altered circumstances." * * *

"The want of mutuality is urged when the appellants are called upon to comply with the covenant, which is valuable to the city of St. Louis, and the public whom that city represents. Such want of mutuality is alleged to consist in the inability of the appellants to prevent other railroads which may use the right of way from discontinuing such use, and in the fact that the contract did not specify the period during which the other railroads should be required to use the right of way. But we think that there is no such want of mutuality as should interfere with the enforcement of the contract." (Joy v. St. Louis, 138 U. S. 1.)

A like conclusion was reached by the Supreme Court of Pennsylvania in Kaufman v. Liggett, 67 L. R. A. 353, where there was a provision in a lease that there should be a renewal on terms to be fixed by persons chosen by the parties. The lessee erected valuable improvements, and at the end of the term, the landlord refused to choose an arbitrator and attempted to take possession of the premises, with the improvements which the tenant had erected. The court enforced the agreement. It is said:

"The real subject matter of the contract being a right to a renewal of the leases, and fixing of the rent being only secondary, the terms as to rental being in substance and effect that the rent shall be a fair one, fixed by an impartial tribunal, for that is all that the clause as to fixing the rent means, has equity jurisdiction? We think it has.

"The right of renewal constituted the substantial element in this portion of the agreement. It was that feature which, in great measure, justified the lessees in erecting upon the premises a large and costly building adapted to the needs of their business."

In Bristol v. Bristol Water Works, 32 L. R. A. 740, the question we have here came before the Supreme Court of Rhode Island, from the standpoint of the water company. There the agreement was that the town might purchase the water works for a fair and reasonable price to be agreed upon by the parties or fixed by arbitrators appointed for that purpose. The town elected to purchase, but the water company refused to fix a price or to name arbitrators, insisting that the contract was void. The court held the contract enforceable. It said:

"In such a case the courts hold that the manner of

determining the price is a matter of form rather than of substance; and if it becomes evident that it cannot be determined in the manner provided for in the contract, by reason of the refusal of one party to do what in equity he ought to do, the court will determine it upon the application of the other."

A like conclusion was reached in Schneider v. Hildenbrand, 36 S. W., 784, Coles v. Peck, 96 Ind., 333, Rutgers v. Hunter, 6 Johns Cr. 205. See also Pomperoy's Equity, section 148-152.

It will be observed that the contract before us is no less mandatory than the contract in the Joy case. The language here is that at the expiration of twenty-five years, if the city of Lexington has not purchased the water works "it shall renew the contract with said company for twenty-five years longer." The parties evidently meant that the contract between the city and the water company should be carried out upon the terms agreed on for twenty-five years, but it was contemplated that the city would grow, and what were reasonable terms then might not be reasonable terms in twenty-five years under changed conditions; and so, they provided that the contract should be renewed, but the terms of the renewal were to be agreed on at the end of the twenty-five years. The water company has invested a large sum of money upon the faith of its contract rights here, and the case is not substantially different from that of a tenant who has built an extensive improvement upon a piece of land under a contract that his lease is to be renewed. A court of equity will not allow injustice to be done or one to reap where another has sowed, upon the faith of a contract like this. At the end of twenty-five years the water company was as much bound to renew the contract as the city was bound. The plain meaning of the writing is that the contract is to be renewed at the end of twenty-five years. It could not be renewed by one alone; so it is evident that both parties were bound to renew. The only distinction between this case and the Joy case is that in the Joy case, the agreement used the words "reasonable and equitable terms to be agreed on," and here the words "reasonable and equitable" are not used. But the sense is manifestly the same. If the words "reasonable and equitable" had been used they would have added nothing to the sense, and the rule is that the omission of what is necessarily implied is immaterial. The water

company by its charter was bound to serve the city on reasonable terms. The council, acting for the city, could only demand of the water company the services contemplated in its charter on reasonable terms. So when the parties made the stipulation that they would renew the contract for twenty-five years longer upon terms as mutually agreed upon at the time, it necessarily meant that the agreement was to be made on reasonable terms. Neither of the parties could foresee what changes twenty-five years would bring about. Neither could tell then what would be reasonable terms at the end of twenty-five years, and so the agreement was expressed as it was. The parties have at the end of twenty-five years agreed upon reasonable terms, and the city being bound by its contract to renew, the property right of the water company to a renewal for twenty-five years was not taken away or affected by the provisions of the present Constitution of the State subsequently adopted.

Judgment affirmed.