## BIRD *v.* COUCHOIS.

1. LANDLORD AND TENANT—LEASES—VALIDITY—UNCERTAINTY AS TO
   AMOUNT OF RENT.
   A lease for a term of 8 years, fixing the rental to be
   paid for the first 5 years at $150 a year, and providing
   that the last 3 years the rent should be raised, the amount
   to be fixed by the lessors, is not void for uncertainty,
   since the lease covers the full period and provides for
   the fixing of the rent to be paid, and although not in the

   On validity and effect of stipulation in contract to renew on
   terms to be agreed upon, see note in 32 L. R. A. (N. S.) 201.

lease, the word "reasonable" may be implied, in view of the previous dealings of the parties.

2. SAME—REASONABLE RENTAL.

A rental of $2,500 a year for the balance of the term, fixed by lessors under the terms of the lease, *held*, not a reasonable amount, and the decree of the chancellor reducing it to $1,000 was not too favorable to plaintiffs.

Appeal from Mackinac; Shepherd (Frank), J. Submitted April 6, 1921. (Docket No. 24.) Decided June 6, 1921.

Bill by Edith Bird and others against Frank A. Couchois and another, copartners as Couchois Brothers, for specific performance of a lease. From a decree for plaintiffs, defendants appeal. Affirmed.

*Sprague & Shepherd,* for plaintiffs.

*Prentiss M. Brown,* for defendants.

FELLOWS, J. The purpose of the bill in this case is to enforce specifically a lease of certain real estate in the city of Mackinac Island. After hearing the proofs the chancellor granted the prayer of the bill and defendants appeal. It appears from the record that defendants leased from Kate Chambers the rink property at Mackinac Island city situate on lot 288 on Main street for 5 years from May 1, 1913, at an annual rental of $150. The defendants were builders and contractors and used the building in the operation of their business. In the following year it is said the defendants expressed themselves as being dissatisfied with the lease and threatened to surrender it. In a talk with Tillie Bird, one of the plaintiffs, and her brother-in-law, Rousseau, it was agreed that defendants should remodel the rink for a movie theatre and they would pay the rent. Subsequently this was

done at an expense of $1,084.19, which was paid by Bird and Rousseau. They operated it during the summer months at a rental of $150 a year and defendants used it in the winter for storage purposes. After operating the theatre for a time Rousseau sold his interest to plaintiffs. In the fall of 1914 defendants arranged with Kate Chambers for a 5-year extension of their lease. This extension provided that for the first 2 years the rent should be $150 a year, the same as the old lease. The last 3 years of the extension it provided:

"For the other three years of the extension for which no rental is mentioned herein, the rate of the rent and the time of payment shall be determined by the party of the first part, her agents or assigns."

Upon receiving this extension defendants made a written lease with plaintiffs for the balance of their time, amounting to practically 8 years. This lease provided for a yearly rental of $150 except the last 3 years. As to those years the lease provided as follows:

"The last three years of this lease the rent to be raised. Amount to be fixed by parties of the first part."

The 3 years which were affected by these provisions were the years 1920, 1921 and 1922. Plaintiffs paid the stipulated rent up to the beginning of the 3 years when they requested the defendants to fix the rent which they should pay during the last 3 years. The defendants hesitated about doing this, although Kate Chambers had fixed their rent at $500 a year. Defendants advised plaintiffs that they wanted the property themselves and that they did not care to fix any rent, but after some pressure they finally fixed the rent at $2,500 a year. This rental was so out of proportion to the real value that plaintiffs refused to pay it. It was contended by them that this rental

was equivalent to a "walkout." They, therefore, filed this bill to enforce specifically the lease, and asked the court to fix a sum which would be a reasonable yearly rental for the premises. The chancellor, after hearing the proofs, held that he would enforce specifically the contract, and fixed a reasonable rental for the 3 years at $1,000 a year. The defendants were not content with this conclusion and have appealed to this court.

The defendants contended in the lower court, and do here, that the last 3 years of this lease is void for uncertainty, inasmuch as no rental is fixed. The questions argued are whether the lease for the last 3 years of 1920, 1921 and 1922 is void for uncertainty. If it be not void for uncertainty, has the court the power to fix a reasonable rental if the defendants refused to do so in accordance with the contract? These are the only questions in the case.

Both counsel have briefed this question with considerable care. After an examination of the authorities cited by them we are impressed that the question whether the lease is void for uncertainty is a close one on the law. It is argued by plaintiffs that the lease for the concluding 3 years is not within the zone of uncertainty which avoids contracts. Speaking generally on the question, it is said in 24 Cyc. pp. 992, 993, that:

"A contract need not presently fix all of the terms of the new lease; it may furnish a certain and definite method for their ascertainment and determination in the future. * * * It is not uncommon to leave some of the provisions of the contract to be completed by future actions, as where the rent of the new term, or the value of the lessee's improvements, is left to be fixed by valuation, arbitration or appraisal. Such stipulations bind the parties; but, if the arbitration provided for should in fact fail, this does not give the lessor the right to dispossess the tenant during the

extended term, and the lessor's delay in having the property valued, upon which valuation the new rent depends, will not preclude him from collecting the new rent for any part of the new term."

The American & English Encyclopædia of Law (2d Ed.), p. 686, commenting upon the same question, says:

"An agreement to renew a lease may be void for uncertainty where it leaves the terms for the renewal uncertain, as where it leaves no certain basis for the ascertainment of the rent to be paid. Although the renewal is not to be upon the terms of the present lease, the terms of the renewal need not be definitely fixed, if a means of definitely fixing them be provided. A covenant to renew at the 'best rent' has been sustained. And provisions for fixing the rent on renewal upon the basis of a valuation of the premises by appraisers, whose appointment is provided in the lease, are quite common and do not render the covenants for renewal invalid for uncertainty."

In the case under consideration the parties agreed in the present lease that:

"The last three years of this lease the rent to be raised. Amount to be fixed by parties of the first part."

The question arises whether the agreement that defendants shall fix the rental for the last 3 years is a means provided for definitely fixing the rental. If it is, then the contract should be enforced. If it does not furnish a means for definitely fixing it then specific performance should be refused.

In *Slade* v. *City of Lexington*, 141 Ky. 214 (132 S. W. 404, 32 L. R. A. [N. S.] 201), it was held that a contract between a municipality and a water company, which provided that the contract shall, at the expiration of a certain time, be renewed upon such terms as are mutually agreed upon at that time, is

not so indefinite as to be invalid, since it will be interpreted as providing for a renewal on reasonable terms.

It was held in *Kaufmann* v. *Liggett*, 209 Pa. 87 (58 Atl. 129, 67 L. R. A. 353), that where the provision in the lease was that there should be a renewal on terms to be fixed by persons chosen by the parties, it was enforceable.

In *Town of Bristol* v. *Water Works*, 19 R. I. 413 (34 Atl. 359, 32 L. R. A. 740), the provision was that the town might purchase the water works for a fair and reasonable price to be agreed upon by the parties or fixed by arbitrators appointed for that purpose. The contract was held enforceable. In this case it was observed that:

"In such a case the courts hold that the manner of determining the price is a matter of form rather than of substance; and if it becomes evident that it cannot be determined in the manner provided for in the contract, by reason of the refusal of one party to do what, in equity, he ought to do, the court will determine it upon an application of the other."

See, also, *Schneider* v. *Hildenbrand & Co.*, 14 Tex. Civ. App. 34 (36 S. W. 784); *Coles* v. *Peck*, 96 Ind. 333; *Rutgers* v. *Hunter*, 6 Johns. Ch. (N. Y.) 215.

The defendants' counsel cites the following cases giving illustrations of contracts which are void for uncertainty: *Howe* v. *Larkin*, 119 Fed. 1005; *Howard* v. *Tomicich*, 81 Miss. 703 (33 South. 493); *Sammis* v. *Town of Huntington*, 171 N. Y. Supp. 965; *Gault* v. *Stormont*, 51 Mich. 636; *Wardell* v. *Williams*, 62 Mich. 54 (4 Am. St. Rep. 814); *Dayton* v. *Stone*, 111 Mich. 196.

It will be unnecessary to review these authorities further than to say we think they involve contracts more difficult of enforcement than the present one, although some of them are very close to the border

line. While the present case is close to the line, there
is one phase of it which distinguishes it from most of
the cases. It is not a question of renewing a lease
or creating a new or similar right, but it is a question
of refixing the rentals of an *existing* lease. The lease
in this case clearly covers the years of 1920, 1921 and
1922, but provides for a change in rentals in those
years. When defendants refixed the rent at $2,500
a year they affirmed this right, and really the only
question involved is whether the rentals they fixed are
reasonable in amount. It is quite evident to us that
when the lease was made both parties contemplated
a reasonable rent, and it would not be a violent as-
sumption, in view of their previous dealings, to say
that the amount fixed by Kate Chambers in her lease
to defendants, or a sum within range of it, was in the
minds of the parties. While the word "reasonable"
is not used in the lease, we think it may be clearly
implied. In discussing this phase of the case, in
*Slade* v. *City of Lexington, supra,* the court said:

"At the end of twenty-five years the water com-
pany was as much bound to renew the contract as
the city was bound. The plain meaning of the writ-
ing is that the contract is to be renewed at the end
of twenty-five years. It could not be renewed by one
alone; so it is evident that both parties were bound
to renew. The only distinction between this case
and the *Joy Case* [138 U. S. 1 (11 Sup. Ct. 243)] is
that in the *Joy Case* the agreement used the words
'reasonable and equitable terms to be agreed on,' and
here the words 'reasonable and equitable' are not used.
But the sense is manifestly the same. If the words
'reasonable and equitable' had been used, they would
have added nothing to the sense, and the rule is that
the omission of what is necessarily implied is im-
material. The water company by its charter was
bound to serve the city on reasonable terms. The
council, acting for the city, could only demand of
the water company the services contemplated in its
charter on reasonable terms. So, when the parties

made the stipulation that they would renew the contract for twenty-five years longer, upon terms as mutually agreed upon at the time, it necessarily meant that the agreement was to be made on reasonable terms.   Neither of the parties could foresee what changes twenty-five years would bring about.  Neither could tell then what would be reasonable terms at the end of twenty-five years, and so the agreement was expressed as it was."

If, then, a reasonable rental was contemplated by the lease, it was defendants' duty to fix a reasonable rent, and the question arises, Have they done so? Much testimony was taken upon this phase of the case by the chancellor.   The conclusion reached by him was that $1,000 a year was, under the circumstances, a reasonable rent.   After going over the testimony we are of the opinion that if any error was made by the chancellor on this phase of the case it was not in favor of plaintiffs.   We are inclined to confirm his finding.

The decree will, therefore, be affirmed, with costs to plaintiff.

STEERE, C. J., and MOORE, WIEST, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.