MANSOUR v. HYMAN WINEGARDEN REALTY CORP.

1. APPEAL AND ERROR—DE NOVO REVIEW—SPECIFIC PERFORMANCE OF LEASE.

Tenant's suit for specific performance of terms of a written lease is reviewed *de novo* on appeal to the Supreme Court.

2. LANDLORD AND TENANT—SPECIFIC PERFORMANCE—FINDING AS TO REASONABLE RENT.

Where rent reserved for meat market property in original 5-year period of written lease was $600 per month, no agreement was reached as to amount of rent for next five-year period and both parties submitted question of reasonable rental to trial court in suit for specific performance of lease, adjudication that $600 per month for first 4 months and $825 per month for balance of first three years with rent for remaining two years being left to arbitration *held*, fair under the circumstances.

3. EQUITY—REHEARING—NEWLY-DISCOVERED EVIDENCE—DILIGENCE.

Plaintiff's motion for rehearing in suit for specific performance of written lease for meat market property on the ground of newly-discovered evidence was properly denied where plaintiff, by the exercise of ordinary diligence, should have known such facts at the time of trial.

Appeal from Genesee; Elliott (Philip), J. Submitted January 15, 1946. (Docket No. 76, Calendar No. 43,286.) Decided April 1, 1946.

Bill by Tom Mansour against Hyman Winegarden Realty Corporation, a Michigan corporation, and another for specific performance of lease and to fix rental. Cross bill by defendant against plaintiff for decree determining that plaintiff has no right

in the premises. Decree fixing amount of rent. Plaintiff appeals. Affirmed.

*Joseph & Joseph*, for plaintiff.

*Guy W. Selby*, for defendant.

Bushnell, J. Plaintiff Tom Mansour, who has been engaged in the meat and grocery business in Flint for the past 30 years, in 1929 entered into a written lease on the entire building at the northeast corner of S. Saginaw and Water streets, of which he sublets parts for operation of departments for the sale of candy, cheese, butter, flowers, fruit, vegetables, groceries, and fish, occupying the remainder of the premises for his meat business.

On August 23, 1938, he executed a new lease for a five-year term at a rental of $600 per month. This lease contained a renewal option worded as follows:

"The owner agrees that at the conclusion of this lease the tenant may, at its option, lease the said premises for an additional period of five years, ending August 31, 1948, at a rental to be agreed upon by said parties at the time said option is exercised."

Mansour continued to occupy the premises after September 1, 1943, without any definite agreement as to the amount of rent for the additional five-year period.

Checks in the amount of $600 each were accepted by the landlord for the months of September, October, November, and December, 1943. Although Mansour was informed in December that the landlord wanted $800 a month for the premises, he insisted that, because of the ceiling prices of the office of price administration, and the increased cost of operation, he was unable to pay more than $600 per month. A little later he was informed that the land-

lord wanted $900 per month, and this demand was successively increased to $1,000, $1,100, $1,250, and finally to $1,500 per month.

Under the terms of the lease, Mansour was required to keep the premises "in good and safe condition and repair." He testified that his present investment in the 50-year-old building is over $50,000. The original lease of 1929 was for 10 years at a monthly rental of $1,125 per month, but this amount was reduced, because of business conditions, for a period to $450 per month.

After the parties were unable to agree upon the rental for the five-year period, beginning September 1, 1943, Mansour, on February 14, 1944, filed a bill of complaint, which was amended on April 12, 1944. In the amended bill he seeks specific performance of the terms of his written lease and a determination by the court of the fair and reasonable rental value of the premises. Mansour also took the position in his bill of complaint that the landlord's acceptance of $600 per month constituted an agreement to renew the lease at this rental for the additional five-year period. The landlord in its answer averred that Mansour is now receiving from his subtenants rentals in excess of $1,000 per month, and because of his failure to exercise the option to negotiate a new lease, the court was without jurisdiction to fix a reasonable rental for the property.

Extensive testimony was taken as to the use, occupancy, and condition of the premises, the improvements made thereon, and the extent of Mansour's operations. Well-informed parties, who were conversant with comparable properties in Flint, and their rentals, expressed in detail their respective opinions as to the fair rental value of the premises in question.

The opinion of the court, interspersed by colloquy of counsel, was dictated upon the record. In this

colloquy it was admitted by counsel for both parties that the court, under the pleadings, having been asked to fix a reasonable rent, had the power to do so. The trial judge discussed the testimony of the real estate experts, one of whom, testifying for defendant, stated that a reasonable rental was $1,000 per month for the first year, increasing 10 per cent. each year for the two next succeeding years. Discussions ensued as to a fair capitalization of the value of the building, its reproduction cost and depreciation because of age, as well as the testimony of witnesses for plaintiff, that, by using the premises most advantageously, a fair rental should be from $650 to $800 per month. The court discussed the treatment of the tenant by the landlord during the period of business depression when the rental of $1,125 per month reserved in the lease was reduced to $450 per month for a considerable period.

The conclusion of the court as expressed in the decree entered was that Mansour is entitled to occupy the premises until August 31, 1948, under the terms, provisions and conditions of the written lease, dated August 23, 1938, at a rental of $600 per month for the months of September, October, November and December, 1943, and $825 per month from January 1, 1944, to August 31, 1946, and that the amount of rental from September 1, 1946, to August 31, 1948, should be determined by three arbitrators, appointed in the usual manner, before August 31, 1946.

The landlord is satisfied with this determination of the controversy, other than contending that the effect of the quoted provision of the lease only gave the tenant the right to negotiate a new lease for an additional period. Mansour, however, takes issue with the decree of the court, and argues that he was entitled to a finding that the lease had been renewed

for an additional five-year period at a monthly rental of $600 per month, and that this amount, as a matter of fact, is a reasonable rental.

Little will be gained by a discussion of adjudicated cases on facts claimed to be comparable to those of the instant case, because any legal issues presented by the pleadings and proofs were resolved into issues of fact by the statements of counsel upon the record, from which we quote in part:

"*Mr. Joseph:* Judge, I wish the record to show that the answer of the defendant Winegarden to the original bill of complaint, that that answer and cross bill applies to the amended bill of complaint. Is that right, Mr. Selby?

"*Mr. Selby:* That is right.

"*The Court:* You both have asked the Court to fix a reasonable rent; you both feel that the Court has power to fix a reasonable rent?

"*Mr. Selby:* I don't care; according—

"*The Court:* You both feel that that matter,— that the Court has power under the state of the pleadings—

"*Mr. Selby:* I think so.

"*Mr. Joseph:* Under the state of the pleadings, the court has that power.

"*The Court:* All right. Then I think that disposes of two questions that are raised. Do you want me to set it right now?

"*Mr. Selby:* Yes.   *   *   *

"*The Court:* What he has stated is that, having asked that, both of you having asked the Court to fix a reasonable rent, neither of you can object on an appeal if the Court now fixes a reasonable rent.

"*Mr. Selby:* That is right; we both asked for it. You cannot submit yourself to the jurisdiction of the Court on the prayer for relief, and then when you get all through, say, why, that is over.

"*The Court:* What do you say? Are you willing to take that same position, Mr. Joseph? I understood you were at the start.

"*Mr. Joseph:* Yes, we will take it.

"*The Court:* All right.

"*A.* Well, then, I will fix the rent as based on the remarks which I have already made, at $825 a month, and that is for three years; it is subject to arbitration at the end of it."

In view of the foregoing and the final determination by the trial judge, there is only presented to us a *de novo* review of the testimony from which we may draw our own conclusions as to reasonable rental. A careful review of this testimony results in the conclusion that the trial judge fairly determined the controversy. The amount determined is fair under the circumstances, and the parties should have no difficulty in arbitrating the rental for the remainder of the lease after August 31, 1946.

Although the effect of the acceptance by the landlord of checks at the rate of $600 per month for the last four months of 1943 and first six months of 1944 need not be determined in the light of the stipulation of counsel, we do, nevertheless, add the following:

This matter was presented in part in an affidavit of Mansour in support of his motion for a rehearing, on the ground of newly-discovered evidence, in which he stated that the evidence as to the acceptance of these checks by the landlord was not available at the time of trial. The testimony taken at the hearing on the motion for rehearing is undisputed that these checks were not accepted in full payment of the rent, and the landlord stated that he was willing to deposit the proceeds thereof with the court for the benefit of plaintiff, if instructed to do so.

This motion was properly denied because Mansour, by exercising only ordinary diligence, should have known all these facts at the time of trial in May, 1944.

The decree is affirmed, with costs to appellee.

BUTZEL, C. J., and CARR, SHARPE, BOYLES, REID, NORTH, and STARR, JJ., concurred.