## STANCROFF v BROWN

1. LANDLORD AND TENANT—LEASES—TERMS OF LEASE—REASONABLE RENT.

A lease agreement is not void for uncertainty where a landlord and tenant have entered into an agreement with all terms definite except for the rent; a reasonable rent is implied in such an agreement, and a trial court may determine what is a reasonable rent where one of the parties refuses to negotiate in good faith.

2. LANDLORD AND TENANT—LEASES—WORDS AND PHRASES—TERMS.

The word "terms" when used with the word "rental" in a lease refers to the manner of paying rent and not to the time period of the lease.

3. LANDLORD AND TENANT—ESTOPPEL—EXTENSION OF LEASE—IMPROVEMENTS BY TENANT—CONDUCT OF LANDLORD.

A landlord may be estopped from denying that a lease could be extended for 10 years at a tenant's option where there was a provision for that period of extension but no positive agreement on the rental where the landlord's conduct led the tenant to make additional expenditures for improvements to the property which was the subject of the lease.

Appeal from Mecosta, Harold Van Domelen, J. Submitted May 5, 1977, at Grand Rapids. (Docket No. 28974.) Decided July 7, 1977.

Complaint by Roy Stancroff against Doyle Brown and Esther M. Brown for specific performance of a lease agreement. Judgment for defendants. Plaintiff appeals. Reversed and remanded.

*Donley, Walz, Fershee & Jordan,* for plaintiff.

REFERENCES FOR POINTS IN HEADNOTES
[1] 49 Am Jur 2d, Landlord and Tenant § 20.
[2] 49 Am Jur 2d, Landlord and Tenant § 552.
[3] 50 Am Jur 2d, Landlord and Tenant §§ 1156–1159.

*Van Kula, Woodruff & Wernette,* for defendants.

Before: J. H. GILLIS, P. J., and D. E. HOLBROOK and A. C. MILLER,* JJ.

A. C. MILLER, J. Roy Stancroff requests specific enforcement of a ten-year lease dated October 18, 1965, providing as follows:

"Lessee shall have the option to renew this lease for a further term of Ten (10) years, from October 18, 1975, to September 30, 1985, or any other period of time to be agreed upon by lessee and lessor, for such terms and rentals agreeable to both parties ninety days (90) prior to initial lease expiration. Lessee shall have first refusal to purchase said premises of first parties, in the event that the property becomes available for sale."

The lessee gave the requisite notice and negotiations were conducted. It should be noted that the new lease was for a definite term, that is, to October 18, 1985. It could be changed by agreement, but in the absence thereof, it was for ten years, that is, until the stated expiration of October 18, 1985.

There was no such provision as to the "terms and rentals". The lease clause merely states "for such terms and rentals agreeable to both parties".

The testimony indicates that in the negotiations, it was the *term of years* and not the amount of rental that caused the breakdown of discussions. Peculiarly enough, tenant is quoted by landlord as offering $400 per month and landlord states this was too much; he testified that he didn't believe in holding up tenants and that $300 to $350 would be sufficient. He stated:

---

* Circuit judge, sitting on the Court of Appeals by assignment.

"Q *[Mr. Van Kula, attorney for defendants.]* What was your conversation with the plaintiff regarding rental value.

"A *[Defendant Doyle Brown.]* We had one conversation on the phone and one with—with Mr. Stancroff over in Cadillac and both times we were talking $400 a month but never did come to the exact terms. We talked in terms of the lease of two or three years or something because there is a situation that I have to consider, ah, on each side of my property as far as an existing lease but, ah, ah, that's—We didn't have anything in writing but that is the fact.

"Q Your discussions centered around the figure of $400 a month.

"A That's right.

"Q What, in your estimate, would be the fair market or a fair rental value for the property.

"A Ah, ah, that would be—depend on the term of the lease but I never had any claim or held any other tenant up as far as price which I would say $300 a month or $350. I never asked $400. That's what I was offered."

Seeking to clarify this point, the Court inquired as follows:

"THE COURT: One—one question, Mr. Brown. Ah, is that your position that the fair rental value that you would rent that for, $300 a month.

"THE WITNESS: Some place between $300 and $350 but I think I would have to realize the length of the lease if it is to be extended and so on.

"THE COURT: In view of the term of the lease for renewal for ten years, is that—

"THE WITNESS: No, that wouldn't be acceptable. The ten year period is what is not acceptable.

"THE COURT: Very well. Then you are not stating what would be acceptable to you for a rental of ten years.

"THE WITNESS: No."

The landlord had no contractual right to insist

on shortening the term. He did have a right to negotiate the rental. In effect, he refused to negotiate in good faith. The testimony of the real estate experts placed the current value of the property in the $27,000 range and the current rental figure in the $195–$225 range for a net lease. The subject lease was not a net lease, since tenant was required to pay the real estate taxes only on the improvements affixed by him. So, while there was expert testimony as to the current value, there was no testimony to aid the court in determining what the appropriate long term rental should be. The only testimony was that inflation was a factor and that a new highway might be built which would be an additional factor. Except for the negotiations at the $400 figure, the court was without evidence as to what a reasonable rental would be for the stipulated period extending to October 18, 1985.

Anno: *Validity and enforceability of provision for renewal of lease at rental to be fixed by subsequent agreement of parties,* 58 ALR3d 500–517, refers to a majority and minority view:

" * * * the modern trend seemed to be in favor of relaxation of the strictness of the rule, particularly when only the amount of rental was left to future agreement. Emphasizing that like all other branches of the law, the rules as to uncertainty in interpreting contracts were developing along with changing conditions in business and human affairs, the court stated that at an earlier time in California, a lease of real property providing for renewal upon rental to be agreed upon at the time of the renewal was considered to be void for uncertainty, the court indicating that California no longer adhered to this view."

If no standards can be gleaned from the instrument and no mechanics are provided, some juris-

dictions hold the contract void for ambiguity and indefiniteness; however, even in those jurisdictions, when the landlord has lulled tenant into a false sense of security by permitting tenant to make substantial improvements to the real estate, the landlord has been held to be estopped to deny that the term "reasonable" is implicit in the lease. When the court has a basis for implying a standard, it then proceeds to judicially determine what is a reasonable rental. In each of the Michigan cases found where a court has set a rental, a method of determination was built into the renewal provision. In *Stern Co v Friedman,* 229 Mich 623, 628; 201 NW 961 (1925), and *Maas Brothers, Inc v Weitzman,* 288 Mich 625, 628; 286 NW 104 (1939), the lease provided for arbitration. In *Mansour v Hyman Winegarden Realty Corp,* 314 Mich 262; 22 NW2d 366 (1946), and *Graseck v Bankers Trust Co,* 315 Mich 650; 24 NW2d 426 (1946), the parties stipulated that they would request the trial court to establish a reasonable rent. In *Michigan Trust Co v Herpolsheimer,* 256 Mich 589, 599; 240 NW 6 (1932), the lease itself explicitly stated the amount of the future rent should the lessee exercise his option to renew, which he did.

In *Bird v Couchois,* 214 Mich 607, 611–614; 183 NW 36 (1921), the parties arranged for a five year extension, fixing the rent for the first two years, and providing that for the last three years the lessor would determine the rate of rent and the time of payment. In *Bird* there was no question that a lease was made for the last three years. Thus, fixing the rent was incident to the valid extension. The Court found that because the parties had definitely extended the lease, that they must have intended that the lessor fix a reasona-

ble rent. The Court then found that the lessor had fixed an unreasonable rent, and readjusted the amount.

In *Bird v Couchois, supra,* at 609, the lease stated:

"For the other three years of the extension for which no rental is mentioned herein, the rate of the rent and the time of payment shall be determined by the party of the first part, her agents or assigns."

This language goes beyond the statement that it is to be agreed upon and states that the lessor may set the rent. The Court held that the lease was not void for uncertainty, that the option was valid and should be enforced. The Court stated:

"It is quite evident to us that when the lease was made both parties contemplated a reasonable rent * * * . While the word 'reasonable' is not used in the lease, we think it may be clearly implied." 214 Mich at 613.

The Michigan Supreme Court quoted *Slade v Lexington,* 141 Ky 214; 132 SW 404 (1910), as follows:

" 'So, when the parties made the stipulation that they would renew the contract for twenty-five years longer, upon terms as mutually agreed upon at the time, it necessarily meant that the agreement was to be made on reasonable terms. Neither of the parties could foresee what changes twenty-five years would bring about. Neither could tell then what would be reasonable terms at the end of twenty-five years, and so the agreement was expressed as it was.' " 214 Mich at 613–614.

Since the term stating "until October 18, 1985," is definite unless modified, *Bird* controls.

The word "terms" in the clause "for such terms and rentals agreeable to both parties" does not refer to the time period. The word "term" has an entirely different

meaning in the plural than it does in the singular. In the singular, it pertains to time:

" 'Term' is generally synonymous with 'period' * * * the time during which anything exists."
41 *Words and Phrases,* Permanent Edition, 572.

In the plural, and by the way it is one of the few words in *Words and Phrases* that has a separate heading section for the plural version, it pertains to conditions and is limited to the context:

"It has been said that the word 'terms' generally relates to conditions." *Id.* at 635.

It also frequently refers to the manner of payment:

"The word 'terms' means the terms upon which the sum or price is to be paid." *Id.* at 637.

Here the word "terms" is used with the word "rental" and must refer to the manner of paying the rental and not to the time period of the lease.

The fact that tenant made additional expenditures in 1972 at the time of assignment and reexecution for the balance of the first ten years, in some measure introduces the additional estoppel factor mentioned in *Holt v Stofflet,* 338 Mich 115; 61 NW2d 28 (1953), quoting at page 119:

" 'The complainant may have estopped himself without any positive agreement, if he intentionally led defendants to do, or to abstain from doing, anything involving labor or expenditure to any considerable amount, by giving them to understand they should be relieved from the burden of the mortgages.' * * * *Faxton v Faxon,* 28 Mich 159 (1873)."

* * *

" 'The vital principle is, that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted.' * * * *Dickerson v Colgrove,* 100 US 578; 25 L ed 618 (1880)."

It is not necessary here for the trial court to rewrite a lease. The terms of the lease were established initially in 1965 and should be included in the lease expiring in 1985 except for the renewal provision itself. In this connection, the instant lease could be labelled an "extension" if such a label is helpful. An extension can be found to exist even if the scrivener has used the term "renew". In *Mutual Paper Co v Hoague-Sprague Corp,* 297 Mass 294, 299; 8 NE2d 802 (1937), the Court said:

"The use of the word 'renewal' alone in a lease provision is not enough to prevent such a provision from being construed as an extension where the latter result is shown by the circumstances to have been intended by the parties."

The only task of the trial court is to establish a reasonable rental for the long term lease and the case is remanded for that purpose.

Reversed and remanded.