319 N.W.2d 823 (1982)
DEADWOOD LODGE NO. 508 BENEVOLENT AND PROTECTIVE ORDER OF ELKS OF the UNITED STATES OF AMERICA, a South Dakota Corporation, Plaintiff and Appellee,
v.
William J. ALBERT, a/k/a W. Alberts, and Wabec, Inc., a South Dakota Corporation, Defendant and Appellant.
Nos. 13537, 13546.
Supreme Court of South Dakota.
Argued February 22, 1982.
Decided May 26, 1982.
*824 William L. Severns, Deadwood, for plaintiff and appellee.
Reed C. Richards of Richards & Richards, Deadwood, for defendant and appellant.
HENDERSON, Justice.

ACTION
William J. Albert, a/k/a W. Alberts and WABEC, Inc., (appellant) appeals from a judgment of the trial court which awarded Deadwood Lodge No. 508 Benevolent and Protective Order of Elks (appellee) $1,050.00 stemming from a bench trial over a dispute between the parties concerning the renewal clause of a lease agreement. This judgment also awarded appellant $7,797.17 for the reasonable value of an air conditioner purchased and installed by appellant but which remained on the leased premises after appellant had vacated same. Pursuant to this appeal, appellee filed a notice of review. We affirm.

FACTS
The parties to this appeal entered into a lease agreement whereby appellant would lease from appellee a building previously known as the "Ben Franklin Store" located in Deadwood, South Dakota. This lease was for a period of five years (commencing on May 31, 1975) providing for a $400.00 monthly rental. The main issue on appeal concerns the following provision in the lease (emphasis supplied):
Lessor [appellee] specifically agrees that Lessees [appellant] shall have the option to renew this Lease for an additional Five (5) year period from and after May 31, 1980 upon all the same terms and conditions, except for the rental consideration which the parties agree to negotiate a mutually acceptable monthly rental.

During the course of this lease, appellant made several thousand dollars worth of improvements and renovations to the leased building, which appellant used as a retail store. These improvements consisted of *825 paneling, carpeting, refurbishment of display areas, new air conditioning and shelving.
In February of 1980 appellee informed appellant that the rent would be increased to $1,000.00 per month commencing at the expiration of the present lease. This being unacceptable to appellant, negotiations occurred but the parties were unable to reach a mutually acceptable agreement for renewal. The negotiations continued until the latter part of May 1980. A finding of fact was made by the trial court which specifically stated that the parties had negotiated in good faith.
A notice to quit was served upon appellant by appellee on June 3, 1980. Due to the presence of inventory in the building, however, appellant was not able to vacate until June 30, 1980, six days after appellee filed its complaint praying for $30,000.00 in damages to the property, possession, and $1,600.00 rent for willful holdover. Appellant filed an answer and counterclaim for damages in the amount of $85,000.00 for loss of good will, lost profit, moving expenses, business losses and additional rent incurred plus $21,000.00 in damages for loss of fixtures.

ISSUES

I.
Did the trial court err by ruling that the option to renew provision contained in the lease was unenforceable? We hold that it did not.

II.
Did the trial court err by not entering a judgment by default against appellee due to the failure of appellee to file a reply to appellant's counterclaim? We hold that it did not.

III.
Did the trial court err in its valuation of appellant's air conditioner? We hold that it did not.

IV.
Did the trial court err in not awarding appellee double damages as per SDCL 21-3-8? We hold that it did not.

DECISION

I.
Appellant contends that the trial court erred by holding that the aforementioned option to renew was unenforceable. It is appellant's position that when, as here, the parties cannot agree on the amount of rent for the renewal period, the judiciary should intervene to determine and provide a reasonable amount of rent based upon current market conditions. The rationale of this position is that the parties to the lease intended, at the time the lease was entered into, to use a reasonable figure to effectuate the option to renew and, when the parties are unable to agree, a reasonable figure will be determined by the courts. By providing this figure, argues appellant, the courts will be preventing the lessor from not allowing the lessee to renew the lease by offering him an unreasonable amount (which is refused by the lessee) and then claim that the option to renew cannot be enforced due to vagueness. Appellant does not deny, however, that he is advocating a position adopted by a minority of the judiciary.[1]
In holding that the option to renew clause was unenforceable, the trial court adhered itself to the majority school of thought which, in essence, promulgates the view that it is not a function of the courts to fix *826 the terms of a lease for the contracting parties.[2]
This Court in Engle v. Heier, 84 S.D. 535, 173 N.W.2d 454 (1970), was confronted with a situation where the parties had allegedly reached an oral agreement to enter into a written lease. In Engle we upheld the trial court's summary judgment that there was no oral agreement for a lease between the parties because there was no showing that the terms of the alleged oral agreement were ever settled and agreed upon. In reaching our decision, we stated:
If it appears that any of the terms of the future lease are left open to be settled by future negotiation between the lessor and lessee "`there is no complete agreement; the minds of the parties have not fully met; and, until they have, no court will undertake to give effect to those stipulations that have been settled, or to make an agreement for the parties respecting those matters that have been left unsettled.'"
Id. at 537, 173 N.W.2d at 456 (citation omitted).
Here, the lease provides that the parties negotiate "a mutually acceptable monthly rental." The parties, however, could not agree upon a mutually acceptable monthly rental. The trial court expressly found that "the parties negotiated in good faith, but were unable to reach an agreement for renewal." We are not disposed to say that this finding was clearly erroneous. See In re Estate of Hobelsberger, 85 S.D. 282, 181 N.W.2d 455 (1970).
We believe that Engle v. Heier, supra, is dispositive of appellant's contention. Furthermore, an agreement to agree does not fix an enforceable obligation. It is indefinite, vague, and uncertain. An agreement must be sufficiently definite to enable a court to give it an exact meaning. See 1 Williston on Contracts § 37 (3d ed. 1957). Accordingly, we hold that the trial court was not erroneous in ruling that the option to renew contained within the lease was unenforceable and, by so doing, we align ourselves with the majority view.

II.
Secondly, appellant contends that the trial court erroneously denied his motion for a default judgment due to appellee's failure to reply to his counterclaim. Appellant did not move for a default judgment until the day of trial when, upon inspection of the trial court's records, he discovered that appellee had not filed an answer to his counterclaim. It is undisputed that appellee did not file an answer to appellant's counterclaim. See SDCL 15-6-12(a).
The trial court entered the following finding of fact with regard to this issue:
That [appellee] did not reply to [appellant's] counterclaim, but that both parties were aware of where they stood on the issues. That a pretrial conference was held and that depositions were taken. That [appellant] moved for a default judgment on the counterclaim on the morning of the trial, but that [appellant] did not comply with the provisions of SDCL 15-6-55(b).[3]
A trial court's findings of fact will not be overturned unless they are clearly erroneous. *827 SDCL 15-6-52(a); In re Estate of Hobelsberger, supra.
Appellant's position is grounded in SDCL 15-6-8(d), which states (emphasis supplied):
Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided.
In accord with SDCL 15-6-8(d), then, appellant's counterclaim for damages was not necessarily admitted due to the failure of appellee to make a responsive pleading.
Moreover, provisions similar to SDCL 15-6-8(d) have been construed in other jurisdictions so as to not, ipso facto, cause every lack of responsive pleading to require a default judgment on the issues raised in the counterclaim. See Verlinden v. Godberson, 238 Iowa 161, 25 N.W.2d 347 (1946) (lack of responsive pleading not fatal since the issues between the parties were held to be sufficiently clear); Dinkel v. Hagedorn, 156 Neb. 419, 56 N.W.2d 464 (1953) (failure to file a reply to an amended answer held not fatal due to both parties treating the affirmative defense as being denied); Pleiman v. Belew, 360 Mo. 219, 227 S.W.2d 733 (1950) (averments in counterclaim held not admitted due to failure of the defendant to timely move for a default judgment).
The causes of action listed in appellant's counterclaim cannot be considered meritorious (even if the averments therein are taken as true) in light of the trial court's ruling that the option to renew was unenforceable. The lease had expired by its own terms. Appellant's claim for damages is founded, essentially, upon wrongful eviction. Our holding on ISSUE I, supra, negates the hypothesis of wrongful eviction. Furthermore, the trial court actually tried matters within the counterclaim such as pegboard, attachment, shelving removal and remodeling expense. Upon consideration of the above authorities, the specific state of the pleadings in this case and the evidence received thereunder, we hold that the trial court did not err in denying appellant's motion for a default judgment.

III.
Pursuant to its notice of review, appellee alleges that the trial court was clearly erroneous in entering a finding of fact that appellant's air conditioner has a value of $7,797.17. This air conditioner was installed in the leased building, at appellant's cost, in May of 1976, and the parties do not dispute that it is the property of the appellant. It remained in the building after appellant had vacated.
A review of the testimony indicates that only appellant produced any evidence regarding the value of the air conditioner; he opined that the replacement value of the air conditioner was approximately $8,000.00.[4]See SDCL 21-1-7; Shaffer v. Honeywell, Inc., 249 N.W.2d 251 (S.D.1976). *828 No objection was made to this testimony nor did appellee present any contrary evidence. The trial court's finding of fact relating to the air conditioner's valuation was not clearly erroneous. We hold that the counterclaim award by the trial court of $7,797.17 unto appellant was proper.

IV.
In its findings of fact and conclusions of law, the trial court stated that appellee was entitled to $800.00 as a reasonable amount of rent for appellant's occupation of the building subsequent to the termination of the lease. Appellee contends that it should have received double damages ($1,600.00) as provided for in SDCL 21-3-8, which states:
For willfully holding over real property, by a tenant after the end of his term, and after notice to quit has been duly given, and demand of possession made, the measure of damages is double the yearly value of the property, for the time of withholding, in addition to compensation for the detriment occasioned thereby.
The flaw in appellee's argument, however, is that there was no finding by the trial court that appellant's post-lease occupation of the building was a "willful holdover." Absent such a finding, the double damage provision of SDCL 21-3-8 does not apply.
The judgment of the trial court is affirmed.
DUNN and MORGAN, JJ., concur.
WOLLMAN, C. J., and FOSHEIM, J., dissent.
FOSHEIM, Justice (dissenting).
While a majority of states have held that a clause giving the lessee an option to renew with the rent to be negotiated is unenforceable, the minority view has gained credible support in recent years. Courts enforcing such clauses stress that it is not a matter of rewriting or making a contract for the parties, but rather of giving effect to their obvious intent, that the rent for the renewal period be reasonable. Therefore, the majority's reliance on Engle v. Heier, 84 S.D. 535, 173 N.W.2d 454 (1970), is misplaced in this case where the only question is the enforcement of one clause in an existing written contract.
Courts enforcing such clauses also rely on the long-standing principle that a lease is generally construed against the landlord where the provision was obviously intended for the benefit of the lessee. Another legal principle justifying enforcement is estoppel. Often, as here, the lessee made costly improvements and worked hard to establish good will in reliance on the renewal clause. Additionally, the renewal clause is part of the consideration offered to induce the lessee to enter into the lease. The lessor benefits from this clause by receiving a higher initial rent in consideration for its inclusion in the lease and from the improvements to the property the lessee makes in reliance on, and in anticipation of his rights under, such clause. Since the lessee has paid valuable consideration for the clause it follows that he should receive the benefit of the clause upon renewal. A detailed exposition of the trend enforcing such clauses, and on which this dissent draws its strengths, is found in Drees Farming Ass'n v. Thompson, 246 N.W.2d 883 (N.D.1976), Stancroff v. Brown, 76 Mich.App. 589, 257 N.W.2d 179 (1977), Playmate Club, Inc. v. Country Clubs, Inc., 62 Tenn.App. 383, 462 S.W.2d 890 (1970), and Annot., 58 A.L.R.3d 500 (1974).
I am authorized to state that Chief Justice WOLLMAN joins in this dissent.
NOTES
[1] See Hammond v. Ringstad, 10 Alaska 543 (1945); Hall v. Weatherford, 32 Ariz. 370, 259 P. 282 (1927); Chaney v. Schneider, 92 Cal. App.2d 88, 206 P.2d 669 (1949); George Y. Worthington & Son Management Corporation v. Levy, 204 A.2d 334 (D.C.App.1964); State Road Department v. Tampa Bay Theaters, Inc., 208 So.2d 485 (Fla.App.1968); Cassinari v. Mapes, 91 Nev. 778, 542 P.2d 1069 (1975); Drees Farming Association v. Thompson, 246 N.W.2d 883 (N.D.1976); Fletcher v. Frisbee, 119 N.H. 555, 404 A.2d 1106 (1979); Moss v. Olson, 148 Ohio St. 625, 76 N.E.2d 875 (1947); Rainwater v. Hobeika, 208 S.C. 433, 38 S.E.2d 495 (1946); Playmate Club, Inc. v. Country Clubs, Inc., 62 Tenn.App. 383, 462 S.W.2d 890 (1970); Moolenaar v. Co-Build Cos., 354 F.Supp. 980 (D.C.V.I.1973); Diettrich v. J. J. Newberry Company, 172 Wash. 18, 19 P.2d 115 (1933).
[2] See Lutterloh v. Patterson, 211 Ark. 814, 202 S.W.2d 767 (1947); Walker v. Keith, 382 S.W.2d 198 (Ky.1964); Metcalf Auto Co. v. Norton, 119 Me. 103, 109 A. 384 (1920); State ex rel. Johnson v. Blair, 351 Mo. 1072, 174 S.W.2d 851 (1943); Rosenberg v. Gas Service Company, 363 S.W.2d 20 (Mo.App.1962); Young v. Sweet, 266 N.C. 623, 146 S.E.2d 669 (1966); Jamison v. Lindbloom, 92 Ohio App. 324, 110 N.E.2d 9 (1951); Slayter v. Pasley, 199 Or. 616, 264 P.2d 444 (1953); Karamanos v. Hamm, 267 Or. 1, 513 P.2d 761 (1973); Vartabedian v. Peerless Wrench Company, 46 R.I. 472, 129 A. 239 (1925); Schlusselberg v. Rubin, 465 S.W.2d 226 (Tex.Civ.App.1971).
[3] SDCL 15-6-55(b) reads:

Judgment by default may be entered as follows:
(1) By the Court. In all cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian or guardian ad litem who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by representative, his representative) shall be served with written notice of the application for judgment at least three days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of this state.
(2) Filing. No default judgment shall be rendered against a defendant until a complaint has been on file at least twenty days unless the complaint has been served with a summons.
(3) Service by Publication. In actions where the service of the summons was by publication before rendering judgment the court may in its discretion require the plaintiff to cause to be filed satisfactory security to abide the order of the court touching the restitution of any estate or effects which may be directed by such judgment to be transferred or delivered or the restitution of any money that may be collected under or by virtue of such judgment in case the defendant or his representative shall apply and be admitted to defend the action and shall succeed in such defense.
[4] An owner of property is competent to testify as to its value. Burke v. Thomas Chevrolet, 88 S.D. 660, 227 N.W.2d 31 (1975); Geo. A. Clark & Son, Inc. v. Nold, 85 S.D. 468, 185 N.W.2d 677 (1971); Hannahs v. Noah, 83 S.D. 296, 158 N.W.2d 678 (1968).